THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARNOLD E. JOHNSON, Defendant-Appellant.

First District (2nd Division) No. 61694

Opinion filed March 9, 1976.

872

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Arnold Johnson, was indicted for burglary and found guilty of attempt burglary. He was sentenced to imprisonment for a period of one to five years.

Defendant submits the following contentions in seeking a reversal, or in the alternative a reversal and remandment for a new trial: (1) the allegation contained in the indictment that defendant "* * * entered into a building, to wit: office of the Social Security Administration of the United States Government * * *" is unconstitutionally vague and uncertain, thus rendering the indictment void; and (2) the trial court erred in not conducting a hearing to determine defendant's mental fitness to stand trial.

Although the sufficiency of the evidence supporting the conviction is not questioned, a brief summation of the facts will lead to a better understanding of defendant's contentions. On December 31, 1973, pursuant to a "burglary in process" radio message, two Chicago police officers proceeded in separate vehicles to the social security office located at 2306 W. Lawrence Avenue, Chicago. The first officer to arrive at the scene knew that the office was closed for the holidays. Upon inspecting the premises, he observed a broken window and a person inside the office going through the file cabinets. The officer entered the building, placed the person under arrest, and advised him of his constitutional rights. The arrestee was subsequently identified as defendant. Defendant related to the officer that he had borrowed a tire iron in order to

break the window, and that he had entered the building for the purpose of looking for a card and his car keys.

A representative of the Social Security Administration testified that he had observed defendant in the office during business hours on several occasions to receive his disability insurance checks. It was necessary for defendant to receive his checks in this manner since he did not have a mailing address. The witness further stated that defendant was neither employed in, nor authorized to enter, the office on the date this incident occurred.

Defendant testified that he had previously been a patient in a mental institution. It was his belief that the checks he received at this office were payments for a mental disability. According to his testimony, defendant broke the window and entered the building in order to escape the cold weather and in anticipation of discerning the whereabouts of his car which he had parked in an adjoining lot the previous day. He did not have any money, and his car provided him with his only means of shelter. He had no intention of removing any property or money from the office or of looking through the file cabinets. He denied telling the police officer that he was looking for his car keys and a card and suggested that he had been misunderstood by the officer. Defendant had been drinking on the date of the occurrence.

■■ Defendant's first contention is that the indictment was void because the street address of the office he was charged with burglarizing was not indicated.[1] Defendant concedes that an address is not ordinarily required in an indictment (*People v. Blanchett,* 33 Ill. 2d 527, 212 N.E. 2d 97), but since at least ten social security offices are located in Chicago, defendant argues that the omission of an address in this indictment created confusion as to which of the numerous offices he was charged with burglarizing. Implicit in this argument is the contention that defendant, due to a lack of specificity in the indictment, was deprived of his constitutional right to know the nature of the charges brought against him so that he could fully prepare his defense and

---

[1] The indictment provided in pertinent part as follows:

"The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois in the name and by the authority of the People of the State of Illinois, upon their oaths present that on December 31st, 1973 at and within said County Arnold E. Johnson committed the offense of burglary in that he, without authority, knowingly entered into a building, to wit: office of the Social Security Administration of the United States Government with the intent to commit the crime of theft therein, in violation of Chapter 38, Section 19—1, of the Illinois Revised Statutes 1971, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois."

plead any judgment in bar of a subsequent prosecution for the same offense.

This same contention was considered and rejected on similar facts in *People v. McKinney*, 126 Ill. App. 2d 339, 261 N.E.2d 797. In *McKinney*, the court held that the failure to allege in a burglary indictment the street address of the burglarized retail store which had more than one Chicago outlet was not a jurisdictional defect. As a result, such a defect could not be raised for the first time in a court of review, and the failure of the accused to file and argue in the trial court a motion to dismiss the indictment resulted in the waiver of this contention for purposes of appeal. 126 Ill. App. 2d 339, 345, 261 N.E.2d 797, 800.

Likewise, in the instant case, the record reveals that defendant neglected to either make a motion to dismiss the indictment or to file a post-trial motion on the grounds raised here. Consequently, defendant is barred from presenting this issue on appeal.

■■ Furthermore, there is nothing in the record to suggest that defendant was prejudiced by this allegedly defective indictment. The defense defendant asserted at trial (namely, that he had no intent to commit the crime of theft in the building) indicates that he was fully aware of the nature of the charges brought against him. Moreover, defendant is in no danger of double jeopardy since the street address of the office he was charged with burglarizing is contained in the record which may be introduced as evidence in any subsequent prosecution for the same offense. *People v. McKinney; People v. Bremer*, 57 Ill. App. 2d 436, 206 N.E.2d 795.

Defendant next contends that the record reflects a bona fide doubt of his mental competence to stand trial, and that it was reversible error for the trial court to deny his motion for a reexamination to determine his fitness to stand trial.

On April 1, 1974, upon defense counsel's motion, the trial court ordered a psychiatric examination of defendant. The report filed pursuant to this order declared defendant fit to stand trial. Thereafter on June 10, a request for a second examination was denied.

Defendant argues that the trial court erred by not conducting a competency hearing either before trial or after the evidence had been elicited in light of his prior mental difficulties, his demeanor in the presence of the court, and the court's observation immediately after sentencing that "He doesn't react as the usual defendant  *  *  *." In maintaining that a bona fide doubt of his competency should have been evident to the trial court, defendant relies upon two brief colloquies prior to trial between his counsel, the court, and himself, and a more extended conference among the same parties during the sentencing hearing.

In *Withers v. People,* 23 Ill. 2d 131, 177 N.E.2d 203, the Supreme Court set forth the test applicable to this situation:

> "The test to be applied in determining whether a defendant has the mental capacity to stand trial is whether he understands the nature and object of the charges against him and can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner. [Citations.] If the defendant does understand the nature and object of the charges against him and can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner, then he is mentally competent to stand trial, although upon other subjects his mind may be unsound." (23 Ill. 2d 131, 135, 177 N.E.2d 203, 206; see Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1.)

A fair and objective reading of the record, particularly defendant's testimony and the colloquies to which he directs our attention, reveals a lack of support for defendant's position that either he did not understand the nature of the charges against him, or that he was unable to cooperate with his counsel in conducting his defense in a rational and reasonable manner.

■■ Defendant's responses during direct examination were clear and consistent with his defense that on the day the incident occurred, he was cold, without money or a place of residence, and that he broke into and entered the office for the purpose of ascertaining the location of his car, his only means of shelter, which had disappeared from an adjoining lot. Under persistent cross-examination, defendant's account of the incident remained unaltered, leading us to conclude that a lack of competence to stand trial was not manifested by defendant's testimony.

Some disapproval of and disagreement with his counsel is indicated by the two colloquies referred to by defendant which occurred prior to trial. In the first instance, defendant voiced some displeasure with his counsel, but subsequently admitted that he may have "misunderstood" the situation. The court then asked if defendant desired to have another attorney appointed, to which defendant replied that he was not certain. As the proceedings continued on that occasion, defendant offered no further objection of his representation.

■■ During the second colloquy, defense counsel announced that defendant was prepared to proceed to trial, but also requested a re-examination to determine defendant's competency to stand trial. Defendant then interjected the following comment:

> "Wait a minute, I don't think I care to have this attorney represent me any more because he continually keeps changing his story around and keeps telling me different things."

Defendant now points to this colloquy as an illustration of his lack of fitness to stand trial, but he does not state in his brief specifically why this development at trial rendered him unable to cooperate with his attorney in conducting his defense. It is unclear from the record whether defendant wanted the trial to commence as soon as possible, or if he desired a competency hearing. Defendant did relate his disdain for the facilities in which he was detained while awaiting trial. It would thus seem that defendant wished to avoid any further delays in the trial. Regardless of what was troubling defendant when this colloquy occurred, the request for a psychiatric examination was denied and the cause continued. Consequently, we do not consider this disagreement between defendant and his counsel as an indication that defendant was incompetent to stand trial.

■■■ The last colloquy defendant cites was primarily an exchange between himself and the court at the time sentence was imposed. Defendant stated that he did not wish to appeal his conviction and that the sentence recommended by his counsel was too short because it would not allow defendant enough time to "cool off" in the penitentiary. Shortly thereafter, the court made its final comment:

> "I am at a loss. We have had several examinations, he has been found fit to stand trial. I am bound. He doesn't react as the usual defendant, I have no alternative but to sentence him according to law; I have so done that."

This behavior by defendant, which he now characterizes as "bizarre and irrational," is irrelevant with respect to an evaluation of his mental competence to stand trial; the fact that defendant did not wish to appeal his conviction and that he desired a longer sentence than that which was recommended to the court by his counsel does not indicate to us that either he did not comprehend the charges brought against him, or that he was unable to cooperate with his attorney in conducting his defense. Defense counsel was asserting a position which he believed was in the best interests of his client. For us to hold that defendant was unfit to stand trial because he disagreed with his counsel on the effectiveness of an appeal in this cause and the length of sentence which would be imposed would have the effect of overturning a trial that we regard to have been brought pursuant to an indictment that fairly apprised defendant of the offense he was charged with committing, and which was properly conducted in consideration of defendant's interests.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

DOWNING and HAYES, JJ., concur.