(No. 48647.–

*In re* WILLIE WASHINGTON, Appellee.–(The Department of Corrections, Appellant.)

*Opinion filed Dec. 3, 1976.–Rehearing denied Jan. 28, 1977.*

William J. Scott, Attorney General, of Springfield

(James B. Zagel, Jayne A. Carr, and Thomas Connors, Assistant Attorneys General, of Chicago, and Joseph Cotugno, of counsel), for appellant.

Roger B. Derstine, John D. Shullenberger, Joan D. Levin and James M. De Zelar, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal by the Illinois Department of Corrections (hereinafter Department) from an order of the circuit court of Cook County, Juvenile Division. We granted direct appeal. Ill. Rev. Stat. 1975, ch. 110A, par. 302(b).

Willie Washington, a juvenile, then age 13, was, on March 6, 1973, adjudicated to be a delinquent minor and a ward of the court. On June 7, 1973, he was committed to the Department, Juvenile Division, subject to the rules and laws "that may be in force from time to time governing said Department of Corrections," and a legal custodian of said minor was appointed. That order further provided that the minor was to be conveyed to the appropriate reception depot "or other place designated by the Department and shall hold said minor, care for, protect and discipline him until he attains the age of twenty one years, or until sooner discharged by order of court." The court retained jurisdiction of the cause for the purpose of making such further orders as the court shall deem to be in the best interests of the minor and the public.

The minor was assigned to the Department's Youth Center at St. Charles. In December 1974, attorneys for the minor, invoking section 5—8 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—8), filed a "Motion for Report of Custodian" requesting the Department to report its doings on behalf of the minor and more specifically requesting that the Department be ordered to disclose the contents of its master record file to counsel; to make

immediate arrangements for a "comprehensive clinical examination"; and that the court enter a judgment declaring that the Department had violated various statutory and constitutional rights of the minor; an order of protection restraining the Department from engaging in "offensive, unlawful and unconstitutional conduct against him"; a permanent injunction restraining the Department from violating the minor's statutory and constitutional rights; and an order removing the minor from the Department's custody and committing him to the custody of another guardian or his parents.

The Department filed a written report as contemplated by section 5–8 on January 28, 1975, and a hearing was conducted on February 10 and 11. The court heard the testimony of John Cheeks, assistant superintendent at St. Charles, and Betty Harris, the minor's counselor, which amplified the statements and exhibits contained in the report. Additional evidence and argument by counsel for the parties were heard by the court during the ensuing four months. Thereafter, on June 10, 1975, the circuit court found that disciplinary practices at the Illinois Youth Center at St. Charles which were applied to the minor were similarly applied to other minors, including wards of the court. In light of the evidence, the court entered orders and findings on behalf of the minor respondent and all other minor wards of the court confined at St. Charles and entered a declaratory judgment, finding that the Department and its employees "have failed to adhere to the minimum level of procedural due process required prior to the imposition of disciplinary isolation at Roosevelt Cottage at St. Charles." Specifically, the court found that minors who were subject to disciplinary isolation were not given any advance notice of the charges against them. While such documents known as "Roosevelt Reports" or "Adjustment Reports" were, at times, given to the minors, they did not contain information on the nature of the misconduct sufficient to enable the minors to respond at

an inquiry into the validity of the charges. The disciplinary isolation in Roosevelt Security Cottage was found to be a significant "loss of liberty" requiring that a hearing be provided to the minors prior to its imposition. The court determined that most of the conduct which resulted in the present minor's isolation could not remotely justify relaxation of the prior hearing requirement on the basis of an immediate need to remove the minor from the general population because of a danger to the safety of other minors or the staff. It was also ascertained that minors were not given a hearing before a staff committee as mandated by the Department's Administrative Regulation No. 505. The failure to conduct a hearing precluded an opportunity for the minors to confront accusers and present evidence on their own behalf. Finally, the court found that the report dealing with a disciplinary violation never indicated a determination of the validity of the charges against a minor, the evidence relied upon, or the reason for isolation. Accordingly, the court entered the following declaratory relief:

"The minor Respondent, and all other wards of this Court committed to the custody of the IDOC, Juvenile Division and confined at the Illinois Youth Center at St. Charles, prior to the imposition of disciplinary isolation or solitary confinement have the right, protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Illinois Juvenile Court Act, sec. 701—2, the Unified Code of Corrections, sec. 1003—10—8 and Administrative Regulation 505 of the IDOC, Juvenile Division.

1. To receive written notice of charges, including a written statement of the misconduct alleged and the rules such conduct is alleged to violate, prior to imposition of disciplinary isolation.

2. To receive a meaningful written statement of the decision to impose disciplinary isolation by persons deciding the charges, including a detailed statement of evidence relied on and reasons for confining in disciplinary isolation.

3. To receive a meaningful opportunity to explain his

actions or otherwise be heard, prior to the imposition of disciplinary isolation, at which time the minors may be allowed to call witnesses or present documentary evidence in their defense, unless the disciplinary report states specific circumstances showing that the calling of witnesses or presentation of documentary evidence is unduly hazardous to institutional safety or would impede rehabilitation or adequate care and treatment.

4. To receive a hearing, specified in (3) *supra*, before an impartial hearing board, prior to imposition of disciplinary isolation."

Pursuant to section 57.1(3) (Declaratory Judgments) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1(3)), the court entered an order against the Department to show cause why a protective order and injunction should not issue, prohibiting the Department and its employees from applying practices and policies contrary to the declaration of rights as set forth by its order. The Department was directed to submit a plan for rectifying the statutory and constitutional infirmities stated in the declaratory judgment. This order was later clarified to specify that prehearing isolation was not prohibited under circumstances where the facts demonstrated a danger to the physical safety of minors or the staff or a danger to the security of the institution as long as the duration of prehearing isolation was minimized.

The Department thereafter submitted a proposed plan entitled "Roosevelt Confinement Procedures." This plan provided, *inter alia,* that disciplinary violations would be categorized as either "emergency" or "nonemergency" cases. In emergency cases, the allegedly offending minor could be summarily confined in a Roosevelt Cottage cell pending the provision of formal written notice. A hearing on the charges would be held by a three-member committee within three hours of the confinement. Emergency cases were defined as those in which (1) "there is a clear and present danger to the physical safety of students or staff," or (2) "the security of the [St. Charles Youth]

Center would be clearly endangered" unless the minor or minors charged with misconduct were summarily confined. In nonemergency cases, the minor who is charged with a rule violation would be removed from the activity to which he had been assigned when the alleged misconduct occurred. He would be detained in "an interview room or the recreation area" pending a hearing. Written notice and a hearing would be provided within one hour of the alleged violation.

Counsel for the minor respondent offered objections to the propriety of the Department's plan, and agrument was heard on January 23, 1976. On March 2, 1976, the court entered a "Memorandum Opinion and Order" whereby it permanently enjoined, pursuant to section 1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 1), the Department and its employees "from applying policies and practices at the Illinois Youth Center at St. Charles which subject wards of this Court to pre-hearing detention in non-emergency cases."

The court found that in emergency cases the minor is detained in a cell in Roosevelt Cottage while in nonemergency cases the minor is detained in an interview or recreation room. In both cases, the door may be locked and the minor isolated pending the hearing. The effect of the due process limitations cannot depend on the characterization of the room in which the minor is detained prior to a hearing. The court concluded that the Department's proposed use of prehearing detention in nonemergency cases would result in a significant "loss of liberty" and the interruption of program activities. Nonemergency procedures would apply to situations where neither the institution's security nor the personal safety of the minors or the staff is in jeopardy. The court found that such nonemergency situations did not involve circumstances which would justify the relaxation of the due process requirement of a predetention hearing. It therefore held that prehearing detention in nonemergency situations

violated due process of the law and was inconsistent with the requirements of section 3—10—8(g)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—10—8(g)(3)) and Administrative Regulation No. 505. The court's opinion noted that the injunctive relief issued affected the nonemergency procedures only to the extent that the minor is not to be removed from activities until the disciplinary hearing committee is convened.

The Department has appealed the circuit court's injunctive order. The basic issue raised by this appeal is the authority of the juvenile division of the circuit court to grant relief other than that specified in the Juvenile Court Act. A situation factually similar to the present case arose in *In re Owen,* 54 Ill. 2d 104. There, the petitioners, who had been adjudged delinquent and confined at the Illinois Industrial School for Boys at Sheridan, filed lengthy and detailed petitions seeking varied relief with the juvenile division of the circuit court of Cook County. Following a hearing and the submission of a report by the Department of Corrections regarding its care and treatment of wards, the court entered an order enjoining the Department from continuing certain practices then in effect regarding the disciplinary use of solitary confinement and tranquilizing drugs. It further directed the Department to establish certain regulations and guidelines for the use of these methods of disciplining or treating wards of that court, stating in detail what, among other things, those guidelines should include. On appeal to this court, we recognized that section 5—8 of the Juvenile Court Act confers upon the court certain powers of supervision over the wards of the court. We could not discover, however, any case wherein that authority had been construed to empower the court to establish particular procedures for the care and discipline of its wards while committed to the Department. Moreover, the court's order applied only to its wards, and if the juvenile division of the courts in each county were to attempt to prescribe specific procedures for the treatment

and discipline of its wards, the divergence of thought among the various courts could make it impossible for the Department to operate. For that reason alone, we concluded that the juvenile division of the circuit court should not undertake to establish such procedures under the authority of section 5—8. We noted that since the entry of the court's order, the Department had adopted regulations which covered those matters encompassed by the order.

The reasoning enunciated in *Owen* applies to the present appeal. Section 5—8 of the Juvenile Court Act provides, in pertinent part, that "[t] he Court may require any legal custodian or guardian of the person appointed under this Act to report periodically to the court or may cite him into court and require him or his agency, to make a full and accurate report of his or its doings in behalf of the minor. *** Upon the hearing of the [custodian's] report the court may remove the custodian or guardian and appoint another in his stead or restore the minor to the custody of his parents or former guardian or custodian." (Ill. Rev. Stat. 1975, ch. 37, par. 705—8(1).) This provision of the Act does not empower the court, pursuant to a petition thereunder, to grant relief other than authorized therein. The court's jurisdiction of the minor respondent was a consequence of its original dispositional order (see Ill. Rev. Stat. 1975, ch. 37, par. 705—2(3)), and the present action was initiated pursuant to a petition under section 5—8 of the Act. If, following the report of the custodian, the court determines that its ward is not receiving the proper care and guidance, it may take that action provided in section 5—8(1). Neither this section nor any other provision of the Act authorizes the court to prescribe procedures for the care and discipline of its wards, and thereby intrude upon traditional matters of internal institutional administration. In *Owen,* the circuit court attempted to set specific guidelines. Here, the court attempts to reach the same result by enjoining certain practices of the Department. As it was reasoned in *Owen,*

to allow the juvenile division of the circuit court of Cook County to enter an injunction against the Department under its interpretation of due process, and pertinent administrative regulations and provisions of the Unified Code of Corrections, would open the door for the juvenile divisions of the courts in the various counties to determine what each believes are the required procedures for disciplining its wards. Such actions would create intolerable problems in administration for the Department, and this alone provides sufficient reason to hold that the court is without authority under section 5—8 to grant relief other than that contained therein. In *Meachum v. Fano* (1976), 427 U.S. 215, 49 L. Ed. 2d 451, 96 S. Ct. 2532, the United States Supreme Court repeatedly emphasized the point that it is not the duty of courts to supervise the day-to-day operations of prison administration. That court was obviously aware of the tremendous administrative problems which would result if courts were to intrude into the daily internal operations of prisons. The actions of the circuit court in the instant appeal are illustrative of that improper activity.

Under the present factual situation, the juvenile division of the circuit court cannot under the guise of an injunction attempt to establish procedures and guidelines for the Department of Corrections for which it has no authority under the Juvenile Court Act.

And we do not find the Department's nonemergency disciplinary procedure violative of due process or inconsistent with Administrative Regulation No. 505 or section 3—10—8(g)(3) of the Unified Code of Corrections. In *Meachum,* the court held that "to hold as we are urged to do that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators ***." (Emphasis added.) (427 U.S. 215, 225, 49 L. Ed. 2d 451, 459,

96 S. Ct. 2532, 2538.) The court further stated that this would place the due process clause astride the day-to-day functioning of State prisons and involve the judiciary in issues and discretionary decisions that are not the business of the courts. Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. 427 U.S. 215, 225, 49 L. Ed. 2d 451, 459, 96 S. Ct. 2532, 2538. See also *Bickham v. Cannon* (7th Cir. 1975), 516 F.2d 885.

Furthermore, section 3—7—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—7—1) authorizes the Department to promulgate rules and regulations in conformity with the Code, and section 3—10—8(b) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 1003—10—8(b)) authorizes the juvenile division to establish rules and regulations governing discipline. Administrative Regulation No. 505, established pursuant to this authority, provides that "extended *periods* of restriction to room and isolation from other youths and staff shall be avoided as a disciplinary measure." The Department's nonemergency procedure contemplates detention for one hour pending written notice and a hearing on the alleged violation. We do not find this procedure inconsistent with the regulation's prohibition against extended periods of isolation. Moreover, the procedure is not in conflict with section 3—10—8(g)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—10—8(g)(3)), which states that a person charged with a rule violation shall be afforded a hearing with the opportunity to appear and address the persons deciding the charge.

Accordingly, for the above stated reasons the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*