THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES EALY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES EALY, a/k/a Daniel Walter, Defendant.—(THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Petitioner-Appellant.)

First District (2nd Division)   Nos. 76-807, 76-1045 cons.

Opinion filed May 31, 1977.

924

Marc O. Been and Gary H. Palm, both of Chicago, for appellant James Ealy.

Barbara A. Weiner and William J. Fitzpatrick, both of Chicago, for appellant The Department of Mental Health and Developmental Disabilities.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and William F. Ward, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

These consolidated appeals concern defendant, James Ealy, who was found unfit to stand trial on a robbery charge (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—2—1, 18—1), yet not "in need of mental treatment" as that phrase is defined in the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11). In case number 76-807 defendant appeals from the amount of bail set at an amount which virtually precludes his release. The trial court first denied motions to release defendant on bail or recognizance and later set bail at $50,000. In case number 76-1045 the Department of Mental Health and Developmental Disabilities (hereinafter "Department") appeals from the trial court's order denying its motion to vacate, alter or amend that portion of the court's previous order requiring the Department to hospitalize defendant pending his appeal. The State has also filed a motion to dismiss the Department's appeal for asserted lack of jurisdiction.[1]

Stated simply, the defendant finds himself between the Scylla of being found mentally unfit to stand trial and the Charybdis of being not in need of mental treatment. The issues raised for our review include the following: (1) whether a defendant found unfit to stand trial and not "in need of mental treatment" within the meaning of the Mental Health Code is entitled to release from custody; (2) whether the bail set in this case is excessive; (3) whether a defendant found unfit to stand trial and unlikely to become fit in the foreseeable future, must be released from custody; (4) whether an order transferring a defendant from custody of the Department of Corrections to the Department of Mental Health is final and appealable; and (5) whether a trial court has the authority to order the Department of Mental Health to hold an individual pending his appeal where he has been adjudicated not "in need of mental treatment."

Defendant was arrested on a robbery charge on February 22, 1975, and released on a recognizance bond. Thereafter he was given a psychiatric examination to determine his fitness to stand trial. Following an examination at the Psychiatric Institute of the Cook County Courts, the defendant's hearing for fitness to stand trial was scheduled for August 8, 1975. Defendant failed to appear on that date and a bond forfeiture and warrant were issued. When defendant appeared on August 14, the bond forfeiture was vacated and the warrant quashed.

On August 14, 1975, a jury, sitting in the criminal division of the circuit court of Cook County, returned a verdict that defendant was not competent to stand trial. Defendant was then ordered transferred to the Department for a determination of whether defendant met the criteria for

---

[1] The People were represented in this court by the State's Attorney of Cook County, the Department by the Attorney General of the State of Illinois.

civil commitment. A hearing was held before the Honorable Lawrence I. Genesen, sitting in the county division of the circuit court of Cook County, on September 17, 1975, and defendant was found not in need of mental treatment. Thereafter, the Department filed a petition in the criminal proceeding for defendant's release on bail or recognizance. Instead, defendant's motion for a second psychiatric examination to determine his fitness to stand trial was allowed. Dr. Lorimer of the Psychiatric Institute examined defendant and again found him unfit to stand trial. Based on that testimony the court, by the Honorable Kenneth Wendt, in the criminal division, on December 22, 1975, ordered defendant transferred to the Department for a second commitment hearing. On January 6, 1976, Judge Genesen again found defendant not in need of mental treatment and the Department petitioned in the criminal proceeding, for the second time, for defendant's release. A hearing was thereafter held before Judge Wendt to again determine defendant's fitness to stand trial.

Dr. Basil Siomopoulos, a psychiatrist for the Department, testified on behalf of defendant that he found no evidence of delusions or active psychosis. Although not schizophrenic, defendant was characterized as possessing a paranoid personality. Further, Siomopoulos testified that defendant was not dangerous and that he had no need for medication or treatment. Dr. Lorimer testified on behalf of the State that defendant was schizophrenic, paranoid, chronic, and that he behaved in an irrational manner. Relying on a 1971 report by a Dr. Stern (an associate of Dr. Lorimer at the Psychiatric Institute of the Cook County Courts), and a 1975 report by a Dr. Goldsmith (an associate of Dr. Siomopoulos of the Illinois State Psychiatric Institute), Lorimer expressed the opinion that defendant was potentially dangerous. The record also indicates, however, that Dr. Goldsmith submitted a later report stating that defendant was not dangerous. Dr. Lorimer explained that while defendant was not always potentially dangerous, he might be if placed in a stressful situation. At any rate, Lorimer stated, in response to a question of the court, that he would not accept the responsibility for releasing defendant.

At the completion of the hearing, the trial court set defendant's bond at $50,000, based upon the court's belief that defendant is a hazard to society and he should be detained until medical personnel do "something" for him. Further, the judge observed that when one doctor says a man is dangerous and another doctor says he is not, the court will believe the doctor who says the man *is* dangerous. Lastly, the court noted that being fit to stand trial is a separate, different matter from being dangerous to self and community.

On January 30, 1976, defendant requested another psychiatric examination to determine whether he would ever become fit to stand

trial. Thereafter Dr. Lorimer again examined defendant and then, at a hearing on May 18, 1976, before Judge Wendt, testified that defendant would not become competent to stand trial in the foreseeable future. Lorimer emphasized that after five examinations his diagnosis remained consistent: schizophrenic, paranoid, chronic. Since the doctor thought it unlikely that defendant would be competent to stand trial in the foreseeable future, defendant's counsel moved to have the charge of robbery dismissed and defendant released from custody. In denying the motion, Judge Wendt said he had to safeguard the six million people in the surrounding community. After the motion was denied, the trial court, on June 24, 1976, issued an order that defendant be transported to the Department and hospitalized during the pendency of his appeal.

On July 1, 1976, the Department filed a motion to vacate, alter or amend Judge Wendt's order which required the Department to hospitalize defendant pending his appeal. The Department argued that the order was in excess of the court's authority and void *ab initio*. The motion was denied.

Defendant now appeals from the denial of his motion for release. The Department appeals from the denial of its motion to vacate, alter or amend the order requiring its hospitalization of defendant. The state has filed a motion to dismiss the Department's appeal.

## I.

■■ At the outset we note that the legislature has created this perplexing dilemma. Section 5—2—1 of the Unified Code of Corrections provides that a defendant (in a criminal proceeding) is unfit to stand trial when he is unable to understand the nature and purpose of the proceedings against him or is unable to assist in his defense.[2] An unfit defendant is remanded to a hospital of the Department for a determination of his need for mental treatment and a proper disposition pursuant to the MHC.[3] Section 1—11 of that Code defines the phrase, "person in need of mental treatment."[4]

---

[2] Section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(a)) provides:

"(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or
(2) to assist in his defense."

[3] Section 5—2—2(a), (b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2(a), (b)) provides:

"(a) If the defendant is found unfit to stand trial or be sentenced, the court shall remand the defendant to a hospital, as defined by the Mental Health Code of 1967, and shall order that a hearing be conducted in accordance with the procedures, and within the time periods, specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge of any such defendant found to be

In essence, once a defendant is found unfit to stand trial, he is remanded to the Department to determine if he should be civilly committed as a person in need of mental treatment. We assume that in most cases an unfit defendant meets the statutory criteria for hospitalization. As the case at bar demonstrates, however, a person charged with a felony may be found unfit to stand trial, but not sufficiently in need of mental treatment under current standards to be committed.[5] This case places the searchlight on an unfortunate problem and cries out for prompt and clear legislative action.[6]

The problem is further compounded by the present circuit court organization. In Cook County, the circuit court is divided into divisions and departments.[7] This is to assist in the many administrative problems in such a large court system. However, each of the judges sitting in any division has concurrent constitutional authority. But in a case such as this, a judge in the criminal division and a different judge in the county division could be considering this related problem. In the interest of proper court administration, and keeping in mind the interests of the defendant, we suggest that the judge in the criminal division should also hear the

---

in need of mental treatment, shall be determined in accordance with such Act. If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health and Developmental Disabilities shall petition the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition.

(b) A defendant hospitalized under this Section shall be returned to the court not more than 90 days after the court's original finding of unfitness, and each 12 months thereafter. At such re-examination the court may proceed, find, and order as in the first instance under paragraph (a) of this Section. If the court finds that defendant continues to be unfit to stand trial or be sentenced but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance. Either the State or the defendant may at any time petition the court for review of the defendant's fitness."

[4] Section 1—11 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11) provides:

" 'Person In Need of Mental Treatment', when used in this Act, means any person afflicted with a mental disorder, not including a person who is mentally retarded, as defined in this Act, if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs. This term does not include a person whose mental processes have merely been weakened or impaired by reason of advanced years."

[5] For a discussion of this precise issue, see Note, *Between Unfitness and Commitment: Difficulties in the Disposition of Unfit Defendants in Illinois*, 9 J. Mar. J. Prac. & Proc. 905 (1976).

[6] Changes in the present Code are currently under consideration. On November 19, 1976, the Honorable Joseph Schneider, Chariman, submitted the *Report of the Governor's Commission for Revision of the Mental Health Code of Illinois.*

[7] For a discussion of the organization of the circuit court of Cook County, see *Nashlund v. Sabade* (1st Dist. 1976), 39 Ill. App. 3d 139, 141, 350 N.E.2d 90.

proceeding involving the MHC. We find no constitutional or statutory objection to such procedure.

Initially, Judge Wendt, pursuant to section 5—2—1, had to determine if defendant could understand the nature and purpose of the proceedings and assist in his own defense (*People v. Salvaggio* (1st Dist. 1976), 38 Ill. App. 3d 482, 487, 348 N.E.2d 243; *People v. Johnson* (1st Dist. 1976), 36 Ill. App. 3d 871, 875, 344 N.E.2d 602; *People v. Fontaine* (5th Dist. 1975), 28 Ill. App. 3d 450, 453, 328 N.E.2d 685; *People v. Mitchell* (1st Dist. 1974), 19 Ill. App. 3d 197, 199, 311 N.E.2d 223), because trial of an unfit defendant is a denial of due process (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239; *People v. Reeves* (1952), 412 Ill. 555, 107 N.E.2d 861; *People v. Johnson* (1st Dist. 1973), 15 Ill. App. 3d 680, 685, 304 N.E.2d 688).

■■ Yet Judge Genesen was to determine whether defendant needed mental treatment, and had to consider whether defendant was expected to injure himself or others and whether he was able to care for himself. (*In re Stephenson* (1st Dist. 1976), 36 Ill. App. 3d 746, 749, 344 N.E.2d 679; *People v. Ralls* (5th Dist. 1974), 23 Ill. App. 3d 96, 100, 318 N.E.2d 703; *People v. Gerich* (1st Dist. 1974), 22 Ill. App. 3d 575, 579, 317 N.E.2d 724; *People v. Bradley* (1st Dist. 1974), 22 Ill. App. 3d 1076, 1083, 318 N.E.2d 267; *In re Sciara* (1st Dist. 1974), 21 Ill. App. 3d 889, 896-897, 316 N.E.2d 153.) The purpose of such a civil commitment hearing is not to determine if a defendant is fit to stand trial, but to determine if he requires mental treatment or hospitalization. (*People v. Davis* (5th Dist. 1975), 25 Ill. App. 3d 1007, 1013-14, 324 N.E.2d 58.) Accordingly, the outcome of the civil commitment hearing does not necessarily indicate whether an individual possesses the mental capacity to stand trial on criminal charges. (*People v. Chambers* (1st Dist. 1976), 36 Ill. App. 3d 838, 843, 345 N.E.2d 119.) Because the object of their inquiries and the standards applicable thereto were distinct, Judges Wendt and Genesen could fairly conclude, and did in fact conclude, that defendant in this case was both unfit to stand trial and not in need of mental treatment. To many this distinction may be difficult to understand and appreciate. The problem arises because the statute, although attempting to protect the rights of the individual defendant, fails to protect the rights of society by not providing specific constitutional direction as to the proper method of handling the defendant. Until this statutory creation is re-examined by the legislature, it is the court's responsibility to resolve this perplexing dilemma.

## II.

Once it became apparent that defendant was neither fit nor committable, Judge Wendt had the duty to comply with section 5—2—2(a) of the Unified Code of Corrections. In pertinent part, the section states if an unfit defendant is not ordered hospitalized as a result of the civil commitment hearing, the Department is to petition for his release on

bail or recognizance under any conditions which the court finds appropriate. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2(a).) Defendant contends that his release is required not only by statute, but also by a recent decision of the Illinois Supreme Court. In *People ex rel. Martin v. Strayhorn* (1976), 62 Ill. 2d 296, 342 N.E.2d 5, the defendant was similarly found unfit to stand trial and thereafter found not in need of mental treatment. When the Department petitioned for Martin's release, the trial court refused to set bond and left him in the Department's custody. In remanding with directions, our supreme court held:

> "The language of section 5—2—2 is clear, and the commentary thereto supports the obvious intent of this statute. If a defendant, who previously has been found unfit to stand trial, is determined not to be 'in need of mental treatment,' as that term is defined in section 1—11 of the Mental Health Code, and does not therefore require hospitalization, section 5—2—2(a) dictates that he be released on bail or recognizance." 62 Ill. 2d 296, 301-02.

Although the facts in *Martin* are almost indistinguishable from those in the instant case, there is one obvious difference. Here bail was eventually set. Further, the supreme court in *Martin* refused to reach the crucial contention in this case: whether the right to release means the right to release either on personal recognizance or on bail which the defendant can financially secure. The *Martin* court said only that the case before it did not present "the proper framework for resolving this question." 62 Ill. 2d 296, 303.

In the case before us, however, defendant specifically contends that the bail of $50,000 was excessive and was in contravention of both the statute and the rule in *Martin*. As the trial court stated, with complete candor and frankness, that it was setting bail high enough to detain defendant, defendant now maintains that the court denied him the opportunity of receiving appropriate out-patient treatment. In accordance with section 5—2—2(a), defendant could have been released on the condition that he secure treatment for his mental condition. Instead, defendant argues that the trial court created its own standard for setting bail and wholly ignored the standards set forth in the bail-setting statute.[8] Defendant suggests that in setting bail Judge Wendt established a new standard, that of "dangerousness."[9]

---

[8] Section 110—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 110—5(a)) provides:
"(a) The amount of bail shall be:
(1) Sufficient to assure compliance with the conditions set forth in the bail bond;
(2) Not oppressive;
(3) Commensurate with the nature of the offense charged;
(4) Considerate of the past criminal acts and conduct of the defendant;
(5) Considerate of the financial ability of the accused."

[9] The accuracy of predicting an individual's "dangerousness" has often been challenged.

■■ Since Judge Genesen found defendant not in need of mental treatment, *i.e.*, not expected to intentionally or unintentionally physically injure himself or others, defendant urges that he had already been determined not dangerous prior to the time Judge Wendt set bail. We think our previous comments are again applicable. The focus of inquiry under the Mental Health Code by Judge Genesen was narrow, as was that of Judge Wendt, a criminal division judge who was concerned with fitness to stand trial. Consequently, the determination of nondangerousness by Judge Genesen did not immediately satisfy Judge Wendt. Under such circumstances Judge Wendt could have considered the bail-setting statute. We are of the opinion that the bail-setting statute authorized Judge Wendt's examination of defendant's alleged dangerousness. In setting the bail, pursuant to section 110—5(a) of the Code of Criminal Procedure, the court was obliged to consider defendant's past criminal acts, if any, his conduct, as well as the other factors enumerated in the section. Consideration of defendant's conduct certainly should include an inquiry into the question of whether his release might potentially endanger the community.

The fact that dangerousness may be considered, however, does not of itself resolve the case at bar. We fully appreciate Judge Wendt's apprehension in releasing a possibly dangerous person on an unsuspecting society, yet we must examine the basis for his fears in regard to this defendant. The only witness who testified before Judge Wendt that defendant is dangerous was Dr. Lorimer, and even he believed that defendant's potential dangerousness would only be evidenced in moments of stress or in stressful situations. Dr. Siomopoulos, on the other hand, testified that defendant was not dangerous and not in need of hospitalization. We note further that defendant had been released on his own recognizance earlier in the proceedings.

The constitution of this state makes clear that all persons are bailable with exceptions which are not here applicable. (Ill. Const., art. I, §9.) One of the fundamental principles in our system is that a person accused of a crime is presumed innocent until proved guilty. As a corollary, the constitutional provision dealing with bail is designed to give the accused liberty until he is proved guilty, but yet to have some assurance that he will appear for trial. (*People ex rel. Gendron v. Ingram* (1966), 34 Ill. 2d 623, 625, 217 N.E.2d 803.) For years the courts have emphasized that the purpose of bail is to make certain a defendant's appearance in court to abide the judgment of the court. *People ex rel. Sammons v. Snow* (1930), 340 Ill. 464, 467, 173 N.E. 8.

See R. Shlensky, *Constitutional Problems with Mental Commitment in Illinois*, 62 Ill. B.J. 552 (1974); F. Flaschner, *The Role of the Court as Mental Health Laws Change*, 62 Ill. B.J. 128 (1973); J. Schneider, *Civil Commitment of the Mentally Ill*, 58 A.B.A.J. 1059 (1972).

■■ Bail should not be allowed or refused on account of the accused's presumed guilt, though the existence of a doubt as to his guilt and the probability of his appearance are proper matters for consideration in determining the amount of bail, and likewise the character and criminal record of the accused are proper matters to be considered in determining the amount of bail, if any. (*In re McGarry* (1942), 380 Ill. 359, 365, 44 N.E.2d 7.) In *People ex rel. Hemingway v. Elrod* (1975), 60 Ill. 2d 74, 81, 322 N.E.2d 837, our supreme court acknowledged the need to balance the right of an accused to be free on bail against the right of the general public to receive reasonable, protective consideration by the courts. In that case the court held that the right to bail is not absolute, but the court also refused to adopt the principle of preventive detention.[10] Instead, the *Hemingway* court endorsed the procedure whereby the court places restrictive conditions on the grant of bail. Such conditions are found in the ABA Standards Relating to Pretrial Release, Standard 5.5 (1968).[11] Further, the Code of Criminal Procedure in section 110—10 states that a court may condition a defendant's bail on his submission to the court's orders and process, and any other reasonable conditions which the court may impose.[12] In addition, bail-jumping is made a criminal offense under our Code, irrespective of the underlying crime for which an accused was

---

[10] The theory of preventive detention and its reliance on accurate predictions of dangerousness is explored in the article by D. Hermann, *Preventive Detention, A Scientific View of Man, and State Power*, 1973 U. Ill. L.F. 673.

[11] Standard 5.5 provides:
"Upon a showing that there exists a danger that the defendant will commit a serious crime or will seek to intimidate witnesses, or will otherwise unlawfully interfere with the orderly administration of justice, the judicial officer, upon the defendant's release, may enter an order:
(a) prohibiting the defendant from approaching or communicating with particular persons or classes of persons, except that no such order should be deemed to prohibit any lawful and ethical activity of defendant's counsel;
(b) prohibiting the defendant from going to certain described geographical areas or premises;
(c) prohibiting the defendant from possessing any dangerous weapon, or engaging in certain prescribed activities or indulging in intoxicating liquors or in certain drugs;
(d) requiring the defendant to report regularly to and remain under the supervision of an officer of the court."

[12] Section 110—10(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 110—10(a)) provides:
"(a) If a person is admitted to bail before conviction the conditions of the bail bond shall be that he will:
(1) Appear to answer the charge in the court having jurisdiction on a day certain and thereafter as ordered by the court until discharged or final order of the court;
(2) Submit himself to the orders and process of the court; and
(3) Not depart this State without leave; and
(4) Not violate any criminal statute of any jurisdiction; and
(5) Such other reasonable conditions as the court may impose."

originally charged. (Ill. Rev. Stat. 1975, ch. 38, par. 32—10; *People v. Tompkins* (4th Dist. 1975), 26 Ill. App. 3d 322, 324, 325 N.E.2d 83; *People v. Logan* (4th Dist. 1974), 23 Ill. App. 3d 41, 42, 318 N.E.2d 94; *People v. Arron* (1st Dist. 1973), 15 Ill. App. 3d 645, 648, 305 N.E.2d 1; *People v. Minefee* (1st Dist. 1973), 14 Ill. App. 3d 796, 797, 303 N.E.2d 591.) Thus, in setting bail a trial court can impose the conditions in the ABA standards and the condition that the defendant not commit an offense while on bail. (*Hemingway,* at 81-82.) But, of course, we are all aware that these conditions are no guarantee that a crime will not be committed.

■■ We believe the *Hemingway* approach is supported by reason. In the instant case, however, Judge Wendt chose the avenue of preventive detention. Believing defendant to be a danger to the community, Judge Wendt stated that he purposely set bond high enough to detain defendant until "some medical people do something with the man." Yet excessive bail should not be required for the purpose of preventing a prisoner from being admitted to bail. (*People ex rel. Sammons v. Snow* (1930), 340 Ill. 464, 467, 173 N.E. 8.) Defendant contends that his $50,000 bond, as in the *Snow* case, could have had no other purpose than to make it impossible for him to post the amount. Conversely, the State contends that the bail was reasonable in that defendant had been indicted for a Class 2 felony and had forfeited bond before. The State maintains further that since defendant could not understand the nature of the charges against him, he most likely could not understand the nature, conditions, and obligations of bail. Lastly the State emphasizes that $50,000 was a reasonable figure because defendant is potentially dangerous. As the record reflects, however, Judge Wendt was more concerned with defendant's alleged dangerousness and the conflicting testimony of the psychiatric experts. In doing so, he did not consider all the factors set forth in sections 110—5 and 110—10.

Although the issue of the bail's reasonableness is crucial in this case, neither defendant nor the State suggested any information concerning defendant's financial state. Our review of the record does not evince such information. A determination of defendant's present financial situation could well shed light on the question of whether $50,000 bail is in fact excessive bail as applied to this particular defendant, for this particular robbery charge, under these particular circumstances. The proper place to determine that is before the trial court. Consequently, we vacate the order of Judge Wendt setting defendant's bail at $50,000 and remand the cause with directions that another bail hearing be held. All relevant factors enumerated by statute should be fully examined at that hearing, including any pertinent testimony relevant to the question of the defendant's current fitness to stand trial.

## III.

■■ Defendant also contends that Judge Wendt's refusal to release him violates the holding in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845. In that case the United States Supreme Court held:

> "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant."
> (406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845.)

Pursuant to *Jackson v. Indiana,* defendant's last mental examination conducted was for the purpose of determining whether he would be fit to stand trial in the foreseeable future. Dr. Lorimer testified that defendant would not be fit in the foreseeable future. Thus, defendant urges that the court had no option but to release him.

But just what does *Jackson v. Indiana* require? Does it require defendant's release, either outright or unconditional, or a release subject to the statutory provisions of section 5—2—2 and the requirements for bail? Section 5—2—2 makes clear that an unfit, uncommittable defendant may be released on bail or recognizance "under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition." And sections 110—5(a) and 110—10(a) of the Code of Criminal Procedure are equally applicable. Finally, the *Martin* and *Hemingway* cases examined earlier in this opinion clarify the proper conditions imposable when an accused is released on bail or on his own recognizance.

In our opinion *Jackson v. Indiana* does not prohibit the trial court from considering sections 110—5(a) and 110—10(a) in determining the conditions under which the defendant may be released on bail.

## IV.

■■ In case No. 76-1045, the State has filed a motion to dismiss the appeal by the Department. In support for the motion the State contends that the order of court from which the Department appeals is not a final and appealable order because it is temporary in nature and does not terminate the litigation on the merits. The trial court had ordered defendant hospitalized in Department facilities pending his appeal; and the Department filed a motion to vacate, alter or amend that order. The motion was denied. The State maintains that the appeal should be

dismissed because the court's order did not terminate the case on its merits and because there is no apparent statutory exception making an interlocutory order of this nature appealable. Appellate courts, subject to rules of the supreme court, are without jurisdiction to review judgments, orders or decrees which are not final; and to be final and appealable, a judgment or order must terminate the litigation between parties on the merits of the cause either upon the entire controversy or upon some definite and separate part thereof. *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 47-48, 147 N.E.2d 371.

The Department argues that the court's order was final and appealable because once the court denied its motion to alter, amend or vacate, the only manner in which the Department's rights could be vindicated or protected was by the appeal process. A decree, notwithstanding it may be denominated interlocutory and direct further proceedings, may so completely adjudicate the rights of the parties as to constitute a final and appealable order. (*Altschuler v. Altschuler* (1948), 399 Ill. 559, 570, 78 N.E.2d 225.) As the Department urges, once the court ordered it to perform certain acts and functions in compliance with the order, the Department became an integral party to the proceedings. Further, since the purpose of a motion to vacate, alter or amend is to bring errors to the court's attention, once the motion was denied the Department needed a means to determine if the court had in fact erred.

The Department's appeal was and is related to defendant's appeal. The two appeals involving the same problem developed because of the statutory dilemma and the failure to consolidate the question in the circuit court. Under the facts and status of this case, a mandamus action by the Department might have been more appropriate. The Department had been ordered to hospitalize defendant despite its belief that Judge Wendt had acted in excess of his authority. To disobey what the Department considered a void order could have resulted in a citation for contempt of court. (*Cf. People v. Adams* (1st Dist. 1976), 35 Ill. App. 3d 810, 343 N.E.2d 659.) Having argued vigorously against the court's order, and thereafter, in favor of the order's vacation, alteration or amendment, the Department did all that it could as an advocate. It could do no more without becoming contumacious.[13] As to the Department, therefore, in this litigation, the trial court's denial of its motion should be considered a final order. That order disposed of the Department's rights upon a

---

[13] Where an order in effect is specifically enforceable by use of the contempt process it is final and appealable whether or not there has been a finding pursuant to Supreme Court Rule 304. *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 414, 259 N.E.2d 282, *cert. denied* (1970), 400 U.S. 926, 27 L. Ed. 2d 186, 91 S. Ct. 188, *Hirsh v. Hirsh* (2d Dist. 1967), 81 Ill. App. 2d 354, 358, 225 N.E.2d 42; *In re Estate of Sherwood* (1st Dist. 1965), 56 Ill. App. 2d 334, 340-41, 206 N.E.2d 304; *Micelli v. Micelli* (1st Dist. 1963), 45 Ill. App. 2d 159, 164-65, 195 N.E.2d 233.

definite and separate part of the controversy. (*South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 121, 254 N.E.2d 448; *Village of Niles v. Szczesny; Altschuler v. Altschuler.*) The State's motion to dismiss the Department's appeal must be denied.

## V.

■■■■ The Department contends that the order transferring defendant from the sheriff's custody to the Department was an improper exercise of judicial authority. In support of this assertion, the Department cites section 5—2—2 of the Unified Code of Corrections and the *Martin* case. The Department's arguments repeat defendant's in many respects, but the Department presents an additional issue. Having been ordered by the trial court to hospitalize and hold defendant, the Department's position challenging the order's validity was tenuous. The Department believed and continues to believe that the trial court had no authority to order the transfer, yet it could not refuse to accept defendant without risking contempt proceedings. This was true despite the Department's belief that it was thereby violating both the Unified Code of Corrections and the Mental Health Code by obeying a court order.

The Department asserts that the specific statutory grant of authority contained in section 5—2—2 cannot be expanded; and that proceedings conducted under statutory grants of authority must be in strict conformity with the statute. (*People v. Nunes* (5th Dist. 1965), 58 Ill. App. 2d 55, 60, 207 N.E.2d 143.) In addition, the Department contends that section 5—2—2 provided Judge Wendt with his alternatives, and that he had no authority, statutory or otherwise, to act in a manner not in accord with section 5—2—2.

We think that the recent case of *In re Washington* (1976), 65 Ill. 2d 391, 359 N.E.2d 133, is analogous to the ones before us. There the trial court was reversed where it had granted relief other than that specified in the appropriate act, the Juvenile Court Act. Here, Judge Wendt ordered the Department to hold defendant notwithstanding the fact that the Unified Code of Corrections and the Mental Health Code permitted no such transfer. In *Washington,* the juvenile division of the circuit court was not authorized to establish procedures and guidelines for the Department of Corrections. (65 Ill. 2d 391, 399.) In the instant case the circuit court was not authorized to establish procedures and guidelines for the Department.

The Mental Health Code, when read in conjunction with the Unified Code of Corrections, clearly indicates that when a person charged with a felony has been found unfit to stand trial, only if such person is thereafter found to be in need of hospitalization, can he be admitted to a facility of the Department. There is no provision for the mandatory admission of a

person charged with a felony pending his appeal when he has twice been adjudicated not in need of hospitalization. Yet the State emphasizes that defendant is dangerous and the court could have ordered him held in either the Cook County jail or the Department. In the instant case, when faced with these alternatives, the defendant requested a transfer to the Department rather than jail. As a result, the State argues that defendant's transfer to the Department resembles a "voluntary admission." (Ill. Rev. Stat. 1975, ch. 91½, pars. 4—1, 5—1.) This novel argument is wholly untenable and refuted by the record: defendant was thrust upon the unwilling Department by order of court. Furthermore, a voluntary patient may be admitted for care and treatment of mental illness upon application if the *superintendent* deems the person suitable for admission (Ill. Rev. Stat. 1975, ch. 91½, par. 5—1); and such a patient has an absolute right to leave (*In re Clement* (1st Dist. 1975), 34 Ill. App. 3d 574, 577, 340 N.E.2d 217).

Although we again acknowledge the difficult decision facing Judge Wendt, there is nothing in either the Unified Code of Corrections or the Mental Health Code permitting unfit defendants to be housed in Department facilities when the Department has already determined that no treatment can be offered to an individual found not in need of mental treatment.[14] In fact, once an individual is no longer in need of hospitalization, the superintendent of the Department must grant an absolute discharge. (Ill. Rev. Stat. 1975, ch. 91½, par. 10—4.) The matter must be remanded to the trial court with directions to vacate its order transferring defendant to Department facilities. In addition, the criminal division of the circuit court of Cook County is directed to conduct a hearing as earlier referred to in this opinion and to enter such orders as are consistent with the views expressed herein and the evidence presented in such hearing.

## VI.

■■ We are acutely aware that additional problems may arise upon remandment of this complex cause. When the bond hearing is completed and reasonable bail or recognizance is authorized, defendant's release will

---

[14] We note that in the absence of treatment the practice of holding individuals in mental hospitals is termed "human warehousing" and is widely criticized. See *Rouse v. Cameron* (D.C. Cir. 1967), 373 F.2d 451; *Wyatt v. Stickney* (M.D. Ala. 1971), 325 F. Supp. 781; (M.D. Ala. 1972), 344 F. Supp. 387, modified *sub nom. Wyatt v. Aderholt* (5th Cir. 1974), 503 F.2d 1305; D. Paull, *The Case for Constitutional Safeguards in the Commitment Process,* 63 Ill. B.J. 568 (1975); *cf. Burnham v. Department of Public Health* (N.D. Ga. 1972), 349 F. Supp. 1335, *rev'd* (5th Cir. 1974), 503 F.2d 1319, *cert. denied* (1975), 422 U.S. 1057, 45 L. Ed. 2d 709, 95 S. Ct. 2680.

most likely be conditioned on his continued compliance with court-ordered restrictions. Potentially at least, under existing statutes, defendant may be released on bail or recognizance forever; a criminal indictment for robbery may also remain against him. Although section 5—2—2(b) addresses the problem of the previously hospitalized, unfit defendant, we believe that provision may equally apply to defendant in the instant case. He, too, may be subject to a State petition for a review of his fitness "at any time." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2(b); see *People v. Coppersmith* (1st Dist. 1977), 47 Ill. App. 3d 67, 361 N.E.2d 773.) We question whether such periodic fitness examinations may be conducted *ad infinitum.* In the absence of a present expression of intent, we believe this issue should be resolved by the legislature.

Our courts have struggled in recent years with the problem of the proper disposition of unfit defendants. In *People v. Lang* (1st Dist. 1975), 26 Ill. App. 3d 648, 325 N.E.2d 305, *cert. denied* (1976), 423 U.S. 1079, 47 L. Ed. 2d 90, 96 S. Ct. 866, *appeal dismissed* (1976), 423 U.S. 1070, 47 L. Ed. 2d 80, 96 S. Ct. 851, the court was confronted by a defendant who was an illiterate deaf mute, unable to communicate with anyone in any language. The cause was remanded for a new hearing to determine the defendant's present fitness. Unlike *Lang,* defendant in this case suffers from no physical handicaps, but has already been found unfit to stand trial more than once in the last two years. In fact Dr. Lorimer testified on May 18, 1976, that in his opinion defendant would not become fit to stand trial in the foreseeable future. Despite this testimony, the trial court denied defendant's motions to dismiss the indictment against him and to release him from custody.

■■ The facts in this case and the disposition of this defendant are equally distinguishable from another recent case dealing with an unfit defendant who somehow managed to exist in the gap between the Criminal Code and the Mental Health Code. In *People v. Byrnes* (2d Dist. 1975), 34 Ill. App. 3d 983, 341 N.E.2d 729, the defendant had been found unfit in 1969 and was eventually civilly committed after an intervening appeal. In 1974 the defendant was found no longer in need of hospitalization. Although no ruling was reached on his present fitness, the trial court nevertheless dismissed the indictments pending against him. On appeal the trial court was directed to determine the defendant's present fitness; the trial court's order dismissing pending indictments was reversed. Thus, in disposing of the defendants before them, both *Lang* and *Byrnes* ordered additional fitness hearings. Neither case assists us in our disposition of defendant as he has already been consistently found unfit to stand trial. We do join, however, with the *Lang* and *Byrnes* courts in expressing hope that the legislature will soon enact comprehensible

guidelines in regard to the disposition of charges against permanently unfit defendants.[15] Section 114—1 of the Code of Criminal Procedure sets forth the statutory basis upon which the trial courts may dismiss indictments. No provision is included to dismiss an indictment for reasons similar to those in the instant case.[16] See also *People v. Williams* (1st Dist. 1977), 47 Ill. App. 3d 798, 365 N.E.2d 415.

We summarize our holdings as follows: (1) the order of the trial court in case No. 76-807 setting defendant's bail at $50,000 is vacated and the cause is remanded for a new hearing to be held in accordance with the views expressed herein; (2) the motion to dismiss the appeal of the Department, in case No. 76-1045, is denied; and (3) the order of the trial court, in case No. 76-1045, denying the Department's motion to vacate, alter or amend the trial court's earlier order is vacated subject to the rights of the Department in the order of the trial court upon remand in No. 76-807.

Reversed and remanded with directions.

STAMOS and PERLIN, JJ., concur.

---

[15] The recently submitted *Report of the Governor's Commission for Revision of the Mental Health Code of Illinois* (1976) does contain helpful suggestions pertaining to the disposition of such defendants.

[16] But see *People v. Lawson* (1977), ___ Ill. 2d ___, ___ N.Ed.2d ___ (Nos. 48554, 48637, 48703, issued June 1, 1977), holding the grounds for dismissing an indictment under 114—1 are *not* exclusive; an indictment may be dismissed if the trial court ascertains that the defendant has been prejudiced by a preindictment denial of due process. (Emphasis in original.) (Slip opinion at 2, 4.)