STATE

v.

**John TAVONE.**

No. 82–62–C.A.

Supreme Court of Rhode Island.

May 27, 1982.

Dennis J. Roberts, II, Atty. Gen., Alan R. Tate, Asst. Atty. Gen., for plaintiff.

Stephen J. Fortunato, Jr., Pawtucket, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, John Tavone (Tavone), stands convicted by a Superior Court jury

of having knowingly presented for commercial gain an obscene motion picture. Subsequent to the conviction the trial justice imposed a two-year prison sentence. Thereafter, the trial justice released Tavone on bail pending our determination of his appeal. One of the conditions involved in the grant of bail was that while Tavone's appeal was pending, he would not exhibit at the theater he owns and operates any X rated motion pictures. Tavone is before us pursuant to our Rule 9, seeking a nullification of the "X rated" stipulation.

Tavone's theater is located in West Warwick, and its operation is licensed by the town council of that municipality. The indictment that led to Tavone's conviction consisted of three counts, two of which related to one movie and the third of which concerned a second movie. The jury acquitted Tavone on the charges included within the two-count movie but convicted him so far as the one-count motion picture was concerned.

In setting the "X rated" prohibition, the trial justice acknowledged that "X rated movies are not automatically to be equated with obscene movies * * *. And if an X rated movie cannot be equated with an obscene movie, Lord knows what distinguishes it from an R rated movie."[1] However, in opting for a blanket exclusion of X rated movies, the trial justice expressed a concern that the public's "confidence in its court system is going to be eroded" if he released Tavone on bail and "then he goes right back into business doing what he has been doing day in and day out." The trial justice warned Tavone that a showing of any X rated movie might be considered ground for revocation of bail.

In *State v. Abbott and Freeman,* 113 R.I. 430, 432, 322 A.2d 33, 35 (1974), this court emphasized that the primary purpose of bail, "be it of the pretrial or the post conviction variety, is to assure a defendant's appearance in court at the appointed time."[2] The trial justice's concern for the judiciary's image is laudable; however, we fail to see the relationship between Tavone's abstention from the showing of a movie bearing an X classification and assurance of his subsequent appearances as well as his submission to the court's judgment. *See also Carter v. Carson,* 370 So.2d 1241 (Fla. 1st D.C.A. 1979).

Accordingly, that portion of the order granting bail which refers to the showing of X rated movies is hereby vacated.

1. A most interesting and enlightening discussion of the movie-rating system can be found in the February 21, 1982 edition of the Providence Sunday Journal at pages H–7 and –8 of the "Arts/Travel/Leisure" section. Michael Janusonis, a Journal arts writer, reports that the rating system was intended by its originator, the Motion Picture Association of America, to serve as a guide for parents. The association obtains its financial support from three groups: movie producers, distributors, and theater owners.

At present a seven-member rating board can place a movie submitted to the board for its review in any one of four categories. A movie rated "G" assures the parents that the film is suitable for the viewing of all. A parent who learns that a movie has been rated "PG" is being told that he or she must make an independent determination as to whether the film in question should be seen by his or her children. Films rated "R" or "X" are considered to be adult material which is not intended for minors. Attendance at an R rated movie is possible for any child who is accompanied to the movie by an adult. Vulgarity will usually earn for a movie an automatic R. Although an X rated movie is presumed to be pornography, some movies have been rated X because of the violence they portray.

According to Mr. Janusonis, there is a belief by some members of the moving-picture industry that the rating system is not in tune with contemporary mores, but as the chairman of the National Association of Theater Owners observed when asked about the rating system: "It's imperfect, but it's the best thing we've got."

2. In *Mello v. Superior Court,* 117 R.I. 578, 582, 370 A.2d 1262, 1264 (1977), we recognized that the grant of bail may be subject to conditions reasonably calculated to further the purpose of bail itself, that is, to ensure the presence of the accused at court. One commonly employed condition is that the individual will keep the peace and be of good behavior.