**1306**

Wendy Kay TINSLEY,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

Peggy Sue FULKERSON,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 82A01–8604–CR–109.

Court of Appeals of Indiana,
First District.

Aug. 25, 1986.

Lee J. Klein, P.C., Durand, Mich., Theodore Lockyear, James A. Kornblum, Lockyear & Kornblum, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendants-appellants, Wendy Kay Tinsley (Tinsley) and Peggy Sue Fulkerson (Fulkerson), bring this interlocutory appeal to contest the Vanderburgh Superior Court's denial of their Objection to Conditions of Bond and Motion to Reconsider Bond Restrictions.

We reverse and remand.

### STATEMENT OF THE FACTS

On February 11, 1986, Tinsley was arrested at the Studio Art Theatre in Evansville for engaging in an allegedly obscene performance. Tinsley posted a $100.00 cash bond and was released. Tinsley and Fulkerson were both arrested for engaging in allegedly obscene performances on February 24 and March 24; on each occasion they were released upon posting $100.00 cash bonds. However, as a condition of the bond following their arrests on March 24, the court forbade Tinsley and Fulkerson from going "on or about the premises known as the Studio Art Theatre." At a hearing on April 2, the defendants moved to consolidate the causes for all purposes except trial, which the court granted. Also at this hearing, the defendants raised several objections, based on constitutional as well as statutory grounds, to the condition imposed by the court. The court overruled these objections on the basis that the bail procedure statute allows a court to restrict certain associations and movements of defendants as a condition of bond. The court did grant Tinsley and Fulkerson a stay of the condition pending this interlocutory appeal.

### ISSUES

Tinsley and Fulkerson raise the same issues in this appeal that they presented at the hearing in the trial court. They are as follows:

I. Whether the bond condition violates the First Amendment because it allegedly acts as a prior restraint of protected activity and restricts the right of free association.

II. Whether the bond condition violates the Sixth Amendment right to effective assistance of counsel because, if appellants are banned from the theatre premises, they will be unable to adequately prepare their defenses.

III. Whether the bond condition constitutes excessive bail in violation of the Eighth Amendment and Article 1, Section 16 of the Indiana Constitution.

IV. Whether the bond condition improperly negates appellant's presumption of innocence.

V. Whether the bond condition is outside the court's statutory authority because it is unrelated to assuring appellants' appearances at future legal proceedings.

Because of our resolution of Issue V, it is unnecessary to address the other four.

## DISCUSSION AND DECISION

■ It has long been recognized that the right to freedom by bail pending trial is interrelated to the Anglo-Saxon doctrine that one accused is presumed innocent until his guilt is proven beyond a reasonable doubt. *Stack v. Boyle* (1951), 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; *Hobbs v. Lindsey, Sheriff, etc.* (1959), 240 Ind. 74, 162 N.E.2d 85. It must also be noted that a bail bond executed by an accused person has a limited function; as defined by statute, it is "for the purpose of ensuring his appearance at the appropriate legal proceeding." IND.CODE 35-33-8-1; *see also Stack, supra* 342 U.S. at 4-5, 72 S.Ct. at 3. As our supreme court has noted, "[t]he object of bail very definitely is not to effect punishment in advance of conviction." *Hobbs, supra,* 240 Ind. at 78, 162 N.E.2d at 88.

The Indiana bail statutes have codified the facts to be accounted for in determining bail. IND.CODE 35-33-8-4(b) provides, in pertinent part:

"Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court. In setting and accepting an amount of bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance, including:

(1) the length and character of the defendant's residence in the community;

(2) the defendant's employment status and history and his ability to give bail;

(3) the defendant's family ties and relationships;

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance; and

(9) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial."

As can be seen, all the facts considered must be relevant to the basic purpose of bail, that is, the risk of the accused's nonappearance.

In admitting an accused person to bail, a court may impose conditions pursuant to IND.CODE 35-33-8-3. In its entirety, this statute is as follows:

"The court may admit the defendant to bail and impose any of the following conditions to assure the defendant's appear-

ance at any stage of the legal proceedings:

> (1) Require the defendant to execute a bail bond with sufficient solvent sureties or to deposit cash or securities in an amount equal to the bail, or to execute a bond secured by real estate in the county, where the true tax value (as determined by IC 6–1.1–1–3) less encumbrances is at least equal to the amount of the bail.
>
> (2) Require the defendant to execute a bail bond by depositing cash or securities with the county clerk in an amount not less than ten percent (10%) of the bail. A portion of this deposit, not to exceed ten percent (10%) of the monetary value of the deposit or fifty dollars ($50), whichever is the lesser amount, may be retained as an administrative fee. A defendant admitted to bail under this subdivision must be notified by the court or clerk that his deposit may be forfeited under section 7 of this chapter.
>
> (3) Impose reasonable restrictions on the activities, movements, associations, and residence of the defendant during the period of release.
>
> (4) Place the defendant under the reasonable supervision of a probation officer or other appropriate public official.
>
> (5) Release the defendant into the care of some qualified person or organization responsible for supervising the defendant and assisting him in appearing in court. The supervisor shall maintain reasonable contact with the defendant in order to assist him in making arrangements to appear in court and, where appropriate, shall accompany him to court. The supervisor need not be financially responsible for the defendant.
>
> (6) Release the defendant on his personal recognizance where the defendant shows little risk of nonappearance.
>
> (7) Impose any other reasonable restrictions designed to assure the defendant's presence in court."

In imposing the bond condition in the case at bar, the trial court was obviously relying on numbered paragraph (3) above, which does allow a court to "[i]mpose reasonable restrictions on the activities, movements, associations, and residence of the defendant during the period of release." *Id.* par. (3). By itself, this would seem to support the action of the court. However, proper statutory construction requires that each section of a statute be considered with reference to the other sections. *Ski World, Inc. v. Fife* (1986), Ind.App., 489 N.E.2d 72. Therefore, numbered paragraph (3) must be interpreted along with the statute's introductory paragraph, which states that the enumerated conditions are "to assure the defendant's appearance at any stage of the legal proceedings," and also with numbered paragraph (7), which allows the imposition of "any other reasonable restrictions designed to assure the defendant's presence in court." Again, these conditions are to be imposed consistent with the basic purpose of bail, to allow an accused the opportunity to properly prepare his defense at freedom, while it insures his presence at trial. *Sherelis v. State* (1983), Ind.App., 452 N.E.2d 411. While the determination of bail in a particular case is within the trial court's discretion, we may review for an abuse thereof. *Green v. Petit* (1944), 222 Ind. 467, 54 N.E.2d 281; *Scruggs v. State* (1974), 161 Ind.App. 672, 317 N.E.2d 800.

Although we have found no Indiana cases directly on point, we have been referred to other jurisdictions which have considered the question of whether a court can impose such a condition as part of pre-trial release. While we are not bound by decisions from foreign jurisdictions, it is appropriate to look to the decisions of other states which interpret statutory language which is identical or of similar import. *Hatfield v. LaCharmant Home Owners Ass'n, Inc.* (1984), Ind.App., 469 N.E.2d 1218, *trans. denied.*

In *Carter v. Carson* (1979), Fla.App., 370 So.2d 1241, the defendants were arrested and charged with a misdemeanor violation of the Florida obscenity statute. As a spe-

cial condition of their bond, the trial court ordered the defendants not to "engage in employment connected with or dealing in the possession of obscene materials with the intent to show, sell or distribute the same." *Id.* at 1242. In voiding the special condition the appellate court concluded that it "enjoins, or attempts to enjoin, some conduct which may or may not be criminal under the laws of Florida, and which has not been shown to bear any relationship to the legitimate purposes of bail, that is, to insure the defendant's appearance at future court proceedings, ... the right to a prior *judicial* determination of what may be enjoined as obscene may not be circumvented...." *Id.* at 1242–43.

The Rhode Island Supreme Court reached a similar result in *State v. Tavone* (1982), R.I., 446 A.2d 741. There, the defendant was convicted of presenting an obscene motion picture and received a two-year prison sentence. Pending his appeal, defendant was released on bail. As a condition thereof, the trial court forbade the defendant from exhibiting any X-rated motion pictures. In imposing this blanket exclusion, the trial court expressed concern that public confidence in the court system would be eroded if the defendant was allowed to continue showing X-rated films while on bail. The supreme court vacated the condition, finding that, while the trial court's concern for the judiciary's image was "laudable," it failed to see the relationship between the defendant's abstention from showing X-rated movies and assurance of his subsequent appearances as well as his submission to the court's judgment. *Id.* at 742.

■ In the case before us, the trial court did not recite the facts it took into account in determining appellants' bail. However, the fact that the bond amount was set at $100.00 leads us to believe that the court did not consider the risk of appellants' nonappearance to be very high. Indeed, the record shows that the appellants have appeared at each hearing in the past and our examination of the record reveals no at-

tempts by them to flee the jurisdiction of the court. Inasmuch as the condition that bans the appellants from the premises of the Studio Art Theatre is irrelevant to assure their appearance at future court proceedings, it cannot stand.

The State argues that since a court can order incarceration in lieu of bond upon a finding of probable cause that an accused has committed an offense while released on bond, then certainly the court has the inherent power to attach reasonable conditions that will provide some assurance that society will be protected, not only from nonappearance, but from further illegal acts, despite the accused's release. The illegal acts the State seeks protection from are the performances which, judging from their multiple arrests, appellants intend to keep giving until the State proves they are obscene. The vehicle for the State's argument is IND.CODE 35–33–8–5(d), which provides:

"The court may revoke bail upon clear and convincing proof by the state that, while admitted to bail, the defendant:

(1) or his agent threatened or intimidated prospective witnesses or jurors concerning the pending criminal proceeding;

(2) or his agent attempted to conceal or destroy evidence relating to the pending criminal proceeding;

(3) violated any condition of his current release order;

(4) failed to appear before the court as ordered at any critical stage of the proceedings; or

(5) committed a felony or a Class A misdemeanor that demonstrates instability and a disdain for the court's authority to bring him to trial."

Specifically, the State argues that, since the court could revoke appellants' bail entirely for engaging in an allegedly obscene performance while released on bond, surely the court can do the lesser thing and ban them from the Studio Art Theatre premises.[1] In addition to the above statute, the

---

1. IND.CODE 35–49–3–2, engaging in an obscene performance, is a Class A misdemeanor.

State cites us to two Illinois cases to buttress its argument, *People ex rel. Hemingway v. Elrod* (1975), 60 Ill.2d 74, 322 N.E.2d 837; *People v. Ealy* (1977), 49 Ill. App.3d 922, 7 Ill.Dec. 864, 365 N.E.2d 149. While we may acknowledge "the need to balance the right of an accused to be free on bail against the right of the general public to receive reasonable, protective consideration by the courts," the facts in *Elrod* and *Ealy* distinguish those cases significantly from the situation before us. *Elrod, supra,* 60 Ill.2d at 81, 722 N.E.2d at 841.

*Elrod* dealt with a defendant who was charged with murder who sought bail as a matter of right. The Illinois Supreme Court held that, while the Illinois Constitution did not allow a person accused of murder an absolute right to bail, the court could admit the defendant to bail as long as it imposed appropriate conditions to protect the public.

Similarly, *Ealy* concerned a person accused of robbery who, after being released on a recognizance bond, failed to appear at a hearing regarding his fitness to stand trial. The defendant did appear at a second fitness hearing, where the court ordered his bail set at $50,000.00, based on a psychiatrist's opinion that the defendant was potentially dangerous to the community. The appellate court vacated the bond, considering it excessive, and remanded, instructing the trial court to impose reasonable conditions on the defendant's bond release.

Thus, *Elrod* and *Ealy* are inapplicable as precedents for the situation before us. Tinsley and Fulkerson are not charged with murder or any other crime of violence, nor has any question been raised regarding their mental instability. There is no evidence in the record to show how their unconditional release would jeopardize public safety. Nor do we believe IND.CODE 35–33–8–5(d)(5) is applicable here. While engaging in an obscene performance is classified as a Class A misdemeanor, it is not an offense which "demonstrates instability and a disdain for the court's authority to bring [the appellants] to trial." *Id.* By their appearances in court, Tinsley and Fulkerson have demonstrated a recognition of the court's authority and jurisdiction over them. Should they behave otherwise, the court then has the discretion to increase or revoke their bond under IND. CODE 35–33–8–5. *See Hughes v. Sheriff of Vigo County* (1978), 268 Ind. 21, 373 N.E.2d 144; *Vacendak v. State* (1973), 261 Ind. 317, 302 N.E.2d 779.

Regardless of our opinion of appellants' performances as they are described in the Informations, it remains incumbent upon the State to prove they are obscene beyond a reasonable doubt at trial. The State has not proven to us how the bond condition is relevant to assuring Tinsley's and Fulkerson's appearance at future court proceedings.

We remand, and instruct the trial court to vacate the condition banning the appellants from the theatre premises.

Judgment reversed and remanded.

ROBERTSON, P.J., and RATLIFF, J., concur.