(No. 75-CV-55–)

IN RE APPLICATION OF IDA SMITH.

*Opinion filed June 28, 1976.*

IDA SMITH, Pro Se.

WILLIAM J. SCOTT, Attorney General of Illinois; PAUL WEST, Assistant Attorney General.

PER CURIAM.

This claim arises out of an incident which took place on February 19, 1974, at 131st Street and Ellis Avenue, Chicago. The Claimant seeks compensation for funeral expenses and loss of support under the provisions of the Crime Victims Compensation Act, (Ill.Rev.Stat., 1973, Ch. 70, Sec. 70, 71, et seq.) (hereafter referred to as the "Act").

The issues presented to the Court are as follows:

(1) Whether the death of the victim was attributable to his own wrongful act or substantial provocation of his assailant.

(2) Whether the Claimant's claim for loss of support for herself and the child of the victim is valid.

(3) Whether the Claimant may receive an award based on dependency while there are other persons who had a legal right to support from the victim who cannot be found and who have not filed claims in this Court.

Evidence was taken by the Court at a hearing conducted by Martin C. Ashman, a Commissioner of this Court.

As to the first issue, the evidence produced by the Claimant was that the victim and a woman, Gwendolyn

Wilson, left the home of the victim's mother, Ida Smith, at 3:30 p.m. on the date in question. The decedent was carrying a set of household type knives in a container which contained slots for the knives and which container was in a bag. The woman, Gwendolyn Wilson, was a girlfriend of the decedent and was the wife of the assailant, having been separated from the assailant and awaiting a divorce.

According to the testimony of Gwendolyn Wilson, the decedent and Gwendolyn Wilson left Ida Smith's home and went to Gwendolyn Wilson's sister's home at 13056 South Ellis, Chicago. They left the sister's home immediately thereafter and as they were leaving they saw Gwendolyn Wilson's husband, Kerry Wilson, the alleged assailant.

As they walked to a bus stop, Kerry Wilson followed calling them dirty names. Kerry Wilson then walked away to his own home only to return a short time later. He accosted the decedent at the bus stop, shaking his finger in the decedent's face and threatening to kill the decedent. The decedent and Kerry Wilson then struggled against each other while facing each other. The decedent then staggered away and Gwendolyn Wilson noticed that Kerry Wilson had a knife in his hand. The victim staggered toward the street and fell. As he lay in the street Kerry Wilson said, "Die, nigger, die. If you don't die I'll kill you anyway." The assailant Kerry Wilson then fled.

The victim was dead on arrival at the hospital of a stab wound in the chest.

The assailant, Kerry Wilson, was indicted on a charge of murder and was subsequently acquitted.

According to Gwendolyn Wilson's testimony the knife used was not one of the knives in the container being carried by the victim. Those knives remained

intact in the container in the bag, which was left torn on the street.

The Respondent was unable to produce Kerry Wilson for the hearing before this Court and therefore did not submit any evidence on this issue.

From the evidence, the Court must conclude that the death of the victim was not attributable to his own wrongful act or substantial provocation.

Walking along the street with the spouse of another cannot be held to be provocation for an assault with a knife, especially when the assailant and his spouse are already separated and in the process of being divorced. The evidence was undisputed that the assailant followed the victim, threatened him, struggled with him physically, had a knife in his hand at the time the victim fell, and cursed and threatened him while he was lying on the street. Any conclusion other than that the attack was unprovoked would have to be based on conjecture.

In reaching this conclusion, the Court has not considered the fact of the acquittal of Kerry Wilson of the criminal charges arising from the incident, inasmuch as the Act provides in Section 7 that the Court:

Need not consider whether or not the alleged assailant has been apprehended or brought to trial nor the result of any criminal proceedings against that person.

Accordingly, this Court finds that Frank T. Smith III was the innocent victim of a violent crime, i.e. "Murder," Ill.Rev.Stat., 1973, Ch. 38, Sec. 9-1.

The Court further finds that the death of the victim was not attributable to his own wrongful act nor substantial provocation of his assailant.

The Court further finds that the victim and the assailant were not related nor sharing the same household.

The next questions to be decided are those of dependency.

According to Claimant Ida Smith's testimony, the Claimant is the mother of the victim. The victim was married to Pamela Smith. Of that marriage there were born three children, namely Michael Smith age 5, Mark Smith age 4 and Frank Smith IV, age 8. The wife, Pamela Smith, left the victim in 1971 taking the children, Michael Smith and Mark Smith, with her and leaving Frank Smith IV to live with the mother of the victim, the Claimant Ida Smith.

The Claimant Ida Smith testified that she has attempted to locate Pamela Smith and the two children, Mark and Michael, but has been unable to do so and at this time does not know where they are located. To her knowledge, her son, the victim, was not sending any support money to his wife nor to his children, Mark and Michael Smith. The Claimant Ida Smith did concede, however, that it was possible that her son had sent Pamela Smith money without the knowledge of the Claimant.

The deceased was, at the time of his death, an employee of the United States Postal Service. He had commenced the employment on October 22, 1973, and his average monthly salary was $443.50 per month.

According to her testimony, the Claimant received from the victim approximately one-half of his net pay check i.e. approximately $200.00 per month. She used this money for food and clothing for herself and the child, Frank Smith IV, and for her other household expenses. Claimant Ida Smith's only other source of income was $79.00 per month from Social Security.

It is obvious from the evidence the Claimant, mother of the victim, received the majority of her support from the victim and that she relied on the victim for support and was to a substantial degree supported by the victim.

The Court therefore finds that the Claimant Ida Smith was a dependent of the victim, Frank Smith III, within the meaning of the Act. The Court further finds that Frank Smith IV, son of the victim, was a dependent of the victim.

As to the third issue, the Act provides in Section 8(b) as follows:

If the Court of Claims finds, in the case of an application made by a person dependent for his support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it shall also (1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled and (3) order that these amounts be paid to those persons directly or, in the case of a minor or incompetent, to his guardian or conservator, as the case may be.

The children of the victim, Mark Smith and Michael Smith, were unquestionably entitled to support from the victim and the wife, Pamela Smith, might have been entitled to support from the victim. But the Court has no evidence to indicate that these persons were, in fact, being supported by the victim at the time of the victim's death. The evidence tends to indicate that they were not dependent upon the victim for support.

It is the opinion of this Court that mere entitlement to support is not dependency under the Act.

Where there is no evidence that a victim was actually contributing to a person's support, or at least was under an order of a court to contribute to that person's support, there can be no dependency under the Act. In looking at the Act as a whole, it is clear that the legislature intended to compensate those persons who lost actual out-of-pocket money as a result of violent crime. Every provision of the Act is strictly limited to out-of-pocket expense.

One who is not actually receiving support at the time of the crime cannot be said to have had an out-of-pocket loss. An expectancy of support is not dependency under the Act.

It is, therefore, the opinion of this Court that an award for loss of support be made to Ida Smith and Frank Smith IV only. The Court is mindful of the fact that neither the minor children, Mark Smith and Michael Smith, nor anyone on their behalf were present before the Court and cannot be found. Therefore, if at any time hereafter, and prior to the full disbursement of the award in this case, an application for a modification of this award is made on their behalf on the grounds that they were actual dependents of the victim, then this Court may at that time modify this award.

The victim was 25 years old at the time of his death. According to the United States Department of Health, Education & Welfare mortality tables, the victim had a life expectancy of 40.6 additional years. Taking $443.50 per month as the victim's average monthly earnings, and taking $200.00 per month as the actual loss of support to his family resulting from his death, the lost support compensable under the Act is far in excess of the $10,000.00 maximum that can be awarded under the Act.

The Court further finds that the Claimant Ida Smith incurred funeral and burial expenses as a result of the death in the amount of $1,109.50 for which she is entitled to reimbursement before an award is granted for loss of support.

That, in determining the amount of compensation to which an applicant is entitled, Section 7(d) of the Act states that this Court:

shall deduct $200.00 plus the amount of benefits, payments or awards, payable under the "Workmans Compensation Act", or from local governmental, state or federal funds or from any other source, (except annuities, pension plans, federal social security benefits and the net proceeds of the first $25,000.00 of life insurance that would inure to the benefit of the applicant . . .).

We interpret the above provision to mean that the benefits received by the victim's family as a result of his

death and a deduction of $200.00 shall be deducted from the total loss sustained and not from the $10,000.00 maximum amount payable under the Act. On this point, we are adopting a recent decision of the Massachusetts Supreme Court on the same point arising under the provisions of an Act identical to ours in all material respects: *Gurley v. Commonwealth,* 296 N.E.2d 477 (1973).

That in the claim before us, no benefits other than social security, which is not deductible under the Act, have been received by either Claimant from other sources. The statutory deduction of $200.00, having been deducted from the amount of loss calculated above, leave an amount of loss sustained by the Claimant far in excess of the $10,000.00 maximum amount that can be awarded under the Act for any loss resulting from a violent crime.

That, before an award is granted for loss of support, the Claimant Ida Smith is entitled to an award to compensate her for the pecuniary loss suffered as a result of the funeral, namely $1,109.50. Hence, the Claimant Ida Smith is entitled to an award of $1,109.50. This leaves an amount of $8,890.50 that can be awarded to the Claimants for lost support of which Claimant Ida Smith is entitled to fifty (50%) per cent and Frank Smith IV is entitled to fifty (50%) per cent.

As to the award to Frank Smith IV, the Court takes notice of the fact that this minor child is being cared for by his grandmother, Ida Smith, who stands in loco parentis to the minor and is the natural guardian of the said minor child.

Under these circumstances, the Court is required to interpret and comply with the following language of the Act found in Section 8(b):

If the Court of Claims finds, in the case of an application made by a person dependent for his support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it shall also

(1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled, and (3) order that these amounts be paid to those persons directly or, in the case of a minor or incompetent, to his guardian or conservator, as the case may be.

To comply strictly with the above legislation, it would seem appropriate and reasonable to order the distribution in accordance with the Probate Act of Illinois which would require the opening of a guardianship estate.

However, to make distribution in this manner, we believe would impose an undue hardship on the grand-mother, Ida Smith. If the funds were paid to her in a lump sum, she would be holding one-half of those funds in trust for the minor child, Frank Smith IV. Although she is guardian of his person, she would have no power to administer his estate, nor use his funds, unless she is duly appointed guardian of the minor's estate as provided by law. *Perry vs. Carmichael,* (1880) 95 Ill. After such appointment, she would be required to manage the child's funds frugally under the direction of the appointing court and present periodic accounts of her guardianship to such court. She would also be responsible for court costs and any legal expenses required in filing her petition for appointment, oath, surety bond, and accounts.

To obviate the necessity of the Claimant, Ida Smith, being appointed guardian of her grandchild's estate, and considering all other facts in this case, the Court believes that the best interest of the victim's family would be served by ordering that this award be disbursed to the Claimant in periodic monthly payments as authorized in Section 8(a)(4) of the Act. As the natural guardian of the said minor child, the grandmother, Ida Smith, has undertaken the obligation of providing suitable support for the said minor child. Having undertaken this obligation, we believe that she would necessarily expend the proper amount from each monthly payment received

hereunder for the care and maintenance of the minor child, Frank Smith IV, as well as for her own necessities.

IT IS THEREFORE HEREBY ORDERED as follows:

(1) The sum of $1,109.50 is awarded to the Claimant Ida Smith, the mother of the victim of a violent crime, for funeral expenses this Claimant paid for the victim.

(2) The total sum of $8,890.50 be awarded to Claimant Ida Smith and the minor child of the victim, Frank Smith IV, collectively, as persons who were all dependent for their support on Frank Smith III, the deceased victim of a violent crime.

(3) That the aforesaid award in Paragraph (2) of this order be paid to the Claimant, Ida Smith, in eighteen (18) monthly installments, the first seventeen (17) in equal amounts of $500.00 each and the last installment in the amount of $390.00.

(4) That during the pendency of the payments hereunder, the Court may modify this order upon proper application being made by any person on behalf of the other minor children of the deceased victim, Frank Smith III.