(No. 76-CV-1174–)

*In re* APPLICATION OF IRA B. REYES.

*Opinion filed September 26, 1979.*
*Opinion on rehearing filed June 11, 1982.*

CHARLES G. LEVY, for Claimant.

WILLIAM J. SCOTT, Attorney General (FAITH SALSBURG and ALAN R. BOUDREAU; Assistant Attorneys General, of counsel), for Respondent.

Poch, J.

This claim arises out of a criminal offense which occurred on or about July 28, 1975. Claimant seeks compensation, on behalf of herself and of her minor children, pursuant to the applicable provisions of the Crime Victims Compensation Act, hereinafter referred to as the Act. Ill. Rev. Stat., ch. 70, par. 71 *et seq.*

The claim was filed on or about July 27, 1976. Following the investigatory Report, the Attorney General requested a hearing.

On December 13, 1978, Commissioner Leo J. Spivack conducted a hearing at Chicago, Illinois.

At the hearing the following facts were established by a preponderance of the evidence and by stipulation of the parties:

1. Claimant's decedent, ex-husband Julio Reyes, was a victim of a violent crime, as defined in Section 2(c) of the Act, to-wit: murder. Ill. Rev. Stat., ch. 70, par. 72(c).

2. Claimant has complied with all pertinent provisions of the Act and qualifies for compensation thereunder.

3. Claimant seeks compensation for loss of support for her three minor children born of the Reyes marriage.

The Reyeses were divorced on July 19, 1974, in the circuit court of Cook County, Illinois.

The court reserved the question of child support payments until such time as personal jurisdiction could be obtained over the defendant, Julio Reyes. On July 28,

1975, Julio Reyes was shot and killed in a tavern at 4233 North Clark Street, Chicago, Illinois. At the date of his death, the circuit court had not secured jurisdiction over the person of Julio Reyes. Therefore there was never any determination made as to child support.

The Court finds that there is no evidence that decedent, Julio Reyes, at any time prior to his death had contributed to the support of his three minor children.

Section 3(a) of the Act (Ill. Rev. Stat. 1977, ch. 70, par. 73(a)) reads: "A person is entitled to compensation under this Act if:

(a) . . . a person who was dependent on a deceased victim [Julio Reyes] of a crime of violence for his support at the time of the death of that victim.

The victim, Julio Reyes has been living apart from his family since March 28, 1972. The divorce decree entered in July 1974 recites that Reyes has provided nothing for the support of his family since his desertion two years earlier. Mrs. Reyes obtained a divorce by default, and therefore the Court did not award her child support.

This Court held in the case of *In re: Application of Smith*, (1976), 31 Ill. Ct. Cl. 675 that: "It is the opinion of this Court that mere entitlement to support is not dependency under the Act."

The Court further stated that: "In looking at the Act as a whole, it is clear that the legislature intended to compensate those persons who lost actual out-of-pocket money as a result of violent crime.

Every provision of the Act is strictly limited to out-of-pocket expense. *One who is not actually receiving support at the time of the crime cannot be said to have had an out-of-pocket loss. An expectancy of support is not dependency under the Act.*"

The Court finds that based upon the foregoing facts

and the applicable law, the Claimant, Ira B. Reyes, is not entitled to an award and that her claim is dismissed.

## OPINION ON REHEARING

ROE, C.J.

This claim arises out of a criminal offense which occurred on or about July 28, 1975. The Claimant, Ira B. Reyes, applied for compensation pursuant to the provisions of the Crime Victims Compensation Act, hereinafter referred to as the Act (Ill. Rev. Stat. 1977, ch. 70, par. 71 *et seq.*), but was denied in an opinion of this Court filed on September 26, 1979. The case is now before the Court on Claimant's motion for rehearing or, in the alternative, a new trial.

The Claimant, Ira B. Reyes, is the ex-wife of the victim of the crime, Julio Reyes, having obtained an *ex parte* divorce in Cook County on July 19, 1974. At the time of the divorce the Reyeses had three children. The court, in its decree of divorce, specifically reserved all questions regarding child support payments until such time as *in personam* jurisdiction could be obtained over the children's father. Approximately one year after his divorce Julio Reyes was shot and killed. At no time subsequent to this divorce was jurisdiction ever obtained over Julio Reyes. Although there is no evidence that Julio Reyes ever contributed to the support of his children nor any evidence that the Claimant even knew of his whereabouts after the divorce, Claimant sought compensation pursuant to the Act for loss of support to her children.

In our opinion rendered September 26, 1979, we found as follows:

"The Court finds that there is no evidence that decedent, Julio Reyes, at any time prior to his death had contributed to the support of his three minor children.

Section 3(a) of the Act (Ill. Rev. Stat. 1977, ch. 70, par. 73(a)), reads: 'A person is entitled to compensation under this Act if:

(a) . . . a person who was dependent on deceased victim (Julio Reyes) of a crime of violence for his support at the time of the death of that victim.'

The victim, Julio Reyes has been living apart from his family since March 28, 1972. The divorce decree entered in July, 1974, recites that Reyes has provided nothing for the support of his family since his desertion two years earlier. Mrs. Reyes obtained a divorce by default, and therefore the Court did not award her child support.

This Court held in the case of *In re Application of Smith,* (1976), 31 Ill. Ct. Cl. 675, that:

'It is the opinion of this Court that mere entitlement to support is not dependency under the Act.'

The Court further stated that:

In looking at the Act as a whole, it is clear that the legislature intended to compensate these persons who lost actual out-of-pocket money as a result of a violent crime. Every provision of the Act is strictly limited to out-of-pocket expense.

*One who is not actually receiving support at the time of the crime cannot be said to have had an out-of-pocket loss. An expectancy of support is not dependency under the Act.'* "

In her petition for rehearing or, in the alternative, a new trial, Applicant asserts that the position quoted above is unconstitutional under the Federal and State constitutions, and that it is not consistent with a decision of the Illinois Supreme Court. It was her position that our opinion was violative of the equal protection clauses of both constitutions in that the distinction drawn between parents and spouses who actually have contributed to the support of their families and those who have not and do not furnish such support penalizes the dependents of those who are "shirkers" and who have abandoned their familial responsibilities. Applicant is not contesting the constitutionality of the Act itself but our application of it.

We have interpreted and applied the Act as we think it was written. If the Act itself, or our interpretation of the Act, or our application of the Act, is unconstitutional then Applicant has a cause of action in another forum

which must be decided before pursuing the matter further in this Court. Our jurisdiction does not extend to determining issues of constitutionality.

Applicant's second contention on rehearing is that our previous decision was not consistent with the terms of the Act. She argues that limiting compensation to actual out-of-pocket losses flies in the face of the definition of pecuniary loss as stated in section 4 of the Act (Ill. Rev. Stat. 1977, ch. 70, par. 74), to wit: "Pecuniary loss . . . includes loss of future earnings because of a disability resulting from an injury . . ." In *Smith, supra*, at 679 we stated that:

"Where there is no evidence that a victim was actually contributing to a person's support, or at least under an order of a court to contribute to that person's support, there can be no dependency under the Act. In looking at the Act as a whole, it is clear that the legislature intended to compensate those persons who lost actual out-of-pocket money as a result of a violent crime. Every provision of the Act is strictly limited to out-of-pocket expense.

One who is not actually receiving support at the time of the crime cannot be said to have had an out-of-pocket loss. An expectancy of support is not dependency under the Act."

In that case we granted an award to the victim's dependents who proved that they were actually being supported by the victim and that award was based on his projected future earnings lost by reason of his death. By actual out-of-pocket losses we meant those losses which could be proven with a reasonable degree of certainty. In the case at bar, there was no evidence to show that the victim was contributing to the applicants' welfare. They did not even know of his whereabouts until after his death. He was not under any court decree to contribute to their support. By reason of his death they suffered no financial loss of support, no loss of anything they had been receiving from the victim. To find that they would have received support in the future under the facts in this case would be too speculative.

Claimant also cited *Gill v. Gill* (1973), 56 Ill. 2d 139,

306 N.E.2d 281, as authority for her position. The issue in that case was "whether it was proper for the trial court to direct the father of a child to reimburse the mother for money expended after their divorce for the child's support during its infancy." *(Gill, supra, at 140.)* In that case, as in the case at bar, the mother obtained an *ex parte* divorce and the court reserved the question of child support alimony due to lack of *in personam* jurisdiction over the father. Thirteen years later *in personam* jurisdiction was obtained and the trial court entered an order for payment of child support retroactive to the date of the divorce. In affirming the trial court's decision on both statutory and common law grounds the supreme court stated:

"The obligation of the father to support his children begins when the child is born and continues during the minority of the child. This obligation of the father to support his minor child is not affected by the decree granting a divorce, nor by a decree granting the care and custody of his child to his wife or some other suitable person. (Citation.) His children are of his blood. It is not their fault that their parents have been divorced." *Supra,* at 143, 144.

We do not dispute the parental obligations of support to minor children described in the *Gill* case which exist in theory. However, just because a parent has a theoretical obligation to support his or her minor children does not mean that those children are actually dependent upon the parent for support. The children in *Gill* cannot be said to have been actually dependent on their father over the many years during which he did not make contributions toward their support.

Our previous decision denying compensation is hereby affirmed.