(No. 84-CC-2688—)

GLENDA HUNTER, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 31, 1992.*

STEINBERG, POLACEK & GOODMAN (BRADLEY STEINBERG, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MONTANA, C.J.

Claimant Glenda Hunter filed this claim on April 6, 1984, seeking wages owed to her. As will be developed herein, the case was not in a posture to be tried for several years thereafter. Trial was finally held on October 10, 1991, briefs were waived, and Commissioner J. Patrick Hanley promptly filed his report.

Glenda Hunter was employed as a correctional parole counselor by the Department of Corrections (hereinafter referred to as the "Department") since February of 1968. Claimant's employment was terminated by the Department on May 4, 1982. As of that date, Claimant's position was Correctional Parole Counselor 3.

On February 1, 1984, the Department, pursuant to an interim order of the circuit court, reinstated Claimant as an employee. Claimant was employed by the Department until she was terminated a second time on March 8, 1985, pursuant to further administrative proceedings.

The Claimant's discharge was the result of administrative proceedings wherein it was alleged by the Department that she violated several of the Department's administrative regulations and policies.

The circumstances of Claimant's discharge are more fully detailed in an August 9, 1989, opinion of the

appellate court of Illinois. (*Department of Corrections v. Illinois Civil Service Comm'n* (1989), 187 Ill. App. 3d 304, 543 N.E.2d 190.) A petition before the Illinois Supreme Court seeking leave to appeal the appellate decision was denied on January 8, 1990, and Claimant was immediately reinstated as an employee of the Department.

The appellate court ultimately found, "that the totality of [claimant's] conduct is insufficient cause for her discharge." (543 N.E.2d 190, 196.) The court, in ruling that her discharge was against the manifest weight of the evidence, remanded the case with directions to reinstate the October 19, 1983, Illinois Civil Service Commission order that suspended Claimant for 90 days. CSC Case No. DA-290-82.

Claimant now seeks a sum (hereinafter referred to as "net back wages"), compensating her for wages she would have earned for the periods of time she was not employed by the Department (hereinafter referred to as "gross back wages"), set off by sums she earned from other employment. Additionally, Claimant seeks interest on her net back wages from August 9, 1989. The total claim is for $136,225.80; $120,553.80 representing net back wages and $15,672.00 as interest.

On May 4, 1990, an order was entered generally continuing this claim. That order stated that Claimant should exhaust her remedies pursuant to section 64.1(m) of the Civil Administrative Code of Illinois. (Ill. Rev. Stat. 1989, ch. 127, par. 63b—4(m).) Section 64.1(m) allows the Department of Central Management Services to pay any wage claim if the

"chief officer of the State agency employing the claimant certifies to [CMS] that the claim is a valid wage claim and that the fiscal year and lapsed period have expired." (par. 63b—4(m).)

The record reveals that Claimant filed a claim for back wages with the Department of Central Management Services. The Department would not certify the claim and objected to payment of the claim. On December 11, 1990, the Department of Central Management Services dismissed her claim for back wages.

Claimant was the only witness called at a hearing on this claim on October 10, 1991. If Claimant was suspended for only 90 days, as ultimately ordered by the appellate court, she testified that she would have returned to work on July 3, 1982.

Claimant testified that the gross wages for her position classification for the respective time periods during the pendency of her discharge case were as follows:

a. $12,539.10 ($2,122.00 monthly) for July 3, 1982, through December 31, 1982;

b. $12,732.00 ($2,122.00 monthly) for December 31, 1982, through July 1, 1983;

c. $14,854.00 ($2,122.00 monthly) for July 1, 1983, through February 1, 1984;

d. $8,501.25 ($2,267.00 monthly) for March 8, 1985, through June 30, 1985;

e. $28,560.00 ($2,380.00 monthly) for July 1, 1985, through July 1, 1986;

f. $7,284.00 ($2,428.00 monthly) for July 1, 1986, through October 1, 1986;

g. $22,725.00 ($2,525.00 monthly) for October 1, 1986, through July 1, 1987;

h. $31,668.00 ($2,639.00 monthly) for July 1, 1987, through July 1, 1988;

i. $33,252.00 ($2,771.00 monthly) for July 1, 1988, through July 1, 1989;

j. $17,208.00 ($2,868.00 monthly) for July 1, 1989, through December 31, 1989; and

k. $647.61 (monthly not indicated) for December 31, 1989, through January 8, 1990.

 Total: $189,970.96

Her testimony indicated what her monthly gross wages would have been and such sums are identified above in parentheses. She did not include wages she earned during her 11-month temporary reinstatement in her claim for back wages.

In addition to gross wages, the Claimant testified she would have received a total of $900.00 in bonuses; $150.00 in 1984, $150.00 in 1985, $200.00 in 1987, $200.00 in 1988, and $200.00 in 1989. Claimant stated that her gross back wages would have been $189,970.96 plus $900.00 in bonuses, for a total of $190,870.96. Claimant's exhibit No. 1, demonstrative evidence of Claimant's testimony, was admitted into the record without objection, as amended to reflect the sum of $190,870.96 as the total of gross back wages.

Claimant argues that she is not required to mitigate her damages. Regardless of the argument, Claimant presented testimony regarding mitigation of damages. Claimant stated that she sought employment during the period of time commencing in the middle of 1982 through January 1990 and at times did have some employment.

On October 8, 1982, she was involved in an automobile accident, suffered two crushed vertebrae and was unable to obtain or hold employment through

the balance of 1982 and throughout all of 1983. She wore a steel brace after the accident until July 1983. She wore a body cast from July 1983 to February 1984, when she returned to work at the Department pursuant to the circuit court's interim order.

After Claimant's initial discharge in 1982, she aided in the preparation of her case, the first hearing occurring on August 26, 1982, and the second on October 12, 1982. She was devastated mentally and was under the care of a doctor. She was denied unemployment compensation after her initial discharge because the discharge was for alleged misconduct. She tried to seek employment at various places including Cook County Jail's Adult Probation Division, Juvenile Probation in Juvenile Court, the Department of Children and Family Services, the Board of Education and Saint Edwards. She attempted to get a job through the State Unemployment Board and by talking to friends. She did not obtain a job offer prior to her automobile accident on October 8, 1982. After her accident, she was physically unable to seek employment. On cross-examination she admitted receiving approximately $17,000.00 as a result of the accident for personal injuries but no sum for loss of earnings.

After her second discharge from the Department on March 8, 1985, she sought employment. After attempting to be hired at some of the places previously mentioned, she changed her employment strategy. She went to "all the hospitals" such as Michael Reese, Jackson Park and Mercy for social work positions. She went to "all the temporary services" to revert to her clerical abilities but could not pass the typing test. She applied at "all the airlines" as a flight attendant. Eastern Airlines apparently offered her a job as ground support but she could not lift luggage because of her back condition. She

went to Kaleidoscope which did not have a position at that time. She also went to Gilly's, Jewel, Walgreens, Clara House Shelter, Mile Square and the Onyx Nail School, without success.

Claimant testified that during all periods of time of unemployment, and those periods of time she was employed in a part-time capacity, *i.e.*, Chicago Area Project, she actively sought employment on an average of twice a week.

Claimant testified that she received the following sums as gross earnings from the following sources, or from unemployment compensation, for the respective time periods:

a. $15,148.00 from the Department for July 1, 1983, through January 13, 1984;

b. $5,434.00 as unemployment compensation in 1985;

c. $7,390.00 from Human Resources Department for 1986;

d. $1,702.11 from Chicago Area Project in 1987;

e. $5,694.00 as unemployment compensation in 1987;

f. $13,272.88 from Kaleidoscope in 1988;

g. $1,058.48 from Chicago Area Project in 1988;

h. $594.00 from Chatham Travel Services in 1988; and

i. $20,024.29 from Kaleidoscope for 1989.

Total: $70,317.16

In summary, Claimant stated that she received a total of $70,317.16 in earnings between July 3, 1982,

through January 8, 1990. The $15,148.00 received from the Department on March 9, 1984, for the time period of July 1, 1983, through January 13, 1984, was apparently back wages paid to her pursuant to the interim reinstatement order of the circuit court.

During cross-examination, Respondent offered into the record as Respondent's exhibit No. 1, a nonpaginated group of tax returns, W-2 statements and other documents for the years 1983 to 1990. The commissioner allowed such documents to be admitted into the record because Claimant identified the documents as tax returns she and her husband filed. Such admission of the exhibit was conditioned on the premise that any document in the exhibit that relates to Claimant's earnings would be relevant and any other document would be disregarded.

Respondent offered into the record Respondent's group exhibit No. 2, a nonpaginated group of documents, declaring it to be the departmental report. Based upon section 790.140 of the Court of Claims Regulations, the exhibit was admitted into the record over the objection of the Claimant. (74 Ill. Admin. Code, sec. 790.) For the purposes of creating a record, Claimant's counsel was permitted to make his objections, or at times, more appropriately, his observations, to any and all pages included in the exhibit. The objections and observations of Claimant's counsel were permitted because Claimant was not afforded the opportunity to cross-examine any of the purported authors, or custodians, of the documents included in the exhibit.

No further evidence was offered by Respondent. In its closing argument, Respondent acknowledged that "Glenda Hunter is owed some money for the time she

was off [but respondent is] not really able to tell how much it is."

This Court need not determine whether Claimant's discharge was proper, or improper, and need not determine whether a 90-day suspension from her job was an appropriate discipline. (*Halima v. State* (1989), 41 Ill. Ct. Cl. 193.) The appellate court has opined that the decisions of the Department and the Illinois Civil Service Commission's second order were against the manifest weight of the evidence. The appellate court ordered Claimant reinstated subject only to a 90-day suspension initially ordered by the Illinois Civil Service Commission.

The Claimant is entitled to receive full compensation as allowed by section 11b of the Personnel Code. Section 11b specifies that:

"Every employee reinstated ° ° ° shall receive full compensation ° ° ° [f]ull compensation shall mean such suspended, discharged or laid off employee would have earned in the position classification during the period of suspension, discharge or layoff less amounts earned by the employee from any other source and unemployment compensation payments received during such period."

(Ill. Rev. Stat. 1989, ch. 127, par. 63b 111b.) Therefore, the issue before this Court is the sum Claimant should be awarded.

According to the Claimant's testimony, she would have received $190,870.96 in gross back wages and bonuses for the periods of time she was discharged. She received earnings from other sources and unemployment compensation totalling $70,317.16 for the same period. After subtracting the statutorily imposed setoffs from her gross back wages, she asserts the net back wages would be $120,553.80.

Claimant stated that she obtained her calculations of gross back wages by referring to, and utilizing, the

union contract that specified the monthly salaries for her position classification for the time periods she was not employed. The monthly salaries are confirmed by certain documents in Respondent's group exhibit No. 2. In relation to Respondent's group exhibit No. 2, the ninth and eleventh pages purport to be calculations of sums owed by Claimant compiled by the Department. The monthly wages stated thereon are identical to those stated in Claimant's testimony.

More importantly, a review of the seventh through tenth pages of the Respondent's group exhibit No. 2 would lead one to conclude that the Department's own calculations show that Claimant's gross back wages were $189,785.88, or $105.08 less than the gross back wages, absent the bonus sums, testified to by Claimant. A review of Claimant's exhibit No. 1 and the ninth page of Respondent's group exhibit No. 2 reveals that the calculations are virtually identical for the period of time commencing March 8, 1985, through December 31, 1989. Two minor distinctions exist; the Department's calculations show gross back wages for March 8, 1985, through June 30, 1985, as $58.63 more than that claimed; and the Department does not calculate a sum owed for January 1 through January 8, 1990.

A review of the second paragraph of the tenth page of Respondent's group exhibit No. 2 clearly shows the Department did not include $25,281.00 in gross back wages for July 3, 1982, through July 1, 1983, to the calculations on the ninth page. Again this is virtually identical to the sum testified to by Claimant. (Claimant's exhibit No. 1.) Similarly, the first paragraph of the tenth page of Respondent's group exhibit No. 2 shows that the Department's calculations on the ninth page do not include $15,148.00 in gross back wages for July 1, 1983,

through January 31, 1984. Therefore, the sums of $25,281.00 and $15,148.00 added to the Department's partial calculation on the ninth page of $149,256.88, show the Department admits Claimant's gross back wages to be $189,785.88.

Claimant testified that the $15,148.00 (for July 1, 1983, to January 31, 1984) was received by her and should be set off. Claimant included the sum in her testimony culminating in a total setoff of $70,317.16. Therefore, she does not include the $15,148.00 in her claim of $120,553.80 for net back wages.

The witness' testimony was credible (as reported by the commissioner who heard it) and substantially corroborated by Respondent's group exhibit No. 2. Therefore we will accept the testimony as it relates to gross back wages, with one exception. There was no testimony or other evidence as to how she would have been entitled to a bonus or how the amount of a bonus would have been determined. Subtracting the $900.00 claimed for bonuses, we find gross back wages are $189,970.96.

The remaining issues relate to the adjustments to the gross figure to be made in arriving at the net due the Claimant. The first issue involves her efforts to mitigate her losses. During Claimant's testimony, the commissioner reported that she appeared to be a credible witness and the transcript shows she answered questions with specifics. The record indicates she assisted in the preparation of her case. She had a severe injury during the latter part of 1982 and most of 1983 which impaired her ability to be mobile and to work. She received unemployment compensation in 1985 and 1987. Therefore she was able to convince the Illinois Department of Employment Security that she was making sufficient

efforts to obtain employment but was unable to find employment. Claimant provided proof of jobs held and wages earned. Respondent did not dispute any of the facts presented by Claimant and offered no evidence which would counter her testimony of efforts to mitigate damages. The Court finds that Claimant made reasonable efforts to mitigate her damages and that $70,317.16 should be deducted from the gross.

The second issue involves her automobile accident. Respondent, citing section 24—6 of the Court of Claims Act, argues that the claim for back wages should be set off by the $17,000.00 received by Claimant as a result of her accident. (Ill. Rev. Stat. 1989, ch. 37, par. 439.24—6.) The Court finds that the back wage claim should not be set off by sums received for personal injuries suffered by Claimant. Claimant testified that no award was made for loss of earnings. Although section 24—6 appears too broad at first blush, it only stated that awards "shall be subject to the right set-off." It does not specify what should be set off. An examination of section 11b of the Personnel Code indicates that the proper setoff is the "amounts earned by the employee." (Ill. Rev. Stat. 1989, ch. 127, par. 63b 111b.). Recovery of damages for personal injuries are not specified in section 11b as a permissible setoff and are not "earned" by a person.

However, the testimony concerning the accident raises another issue, one that neither side addressed. The Claimant is entitled to that compensation she would have *earned* during the period of the wrongful discharge. During that period she was an accident victim and suffered severe personal injuries. It is clear to the Court that for some period of time she could not have worked and therefore may not have *earned* her salary.

The Claimant testified she was in a serious automobile accident on October 8, 1982, and hospitalized at three different hospitals until November 6, 1982. (Tr. 6) She said she was unable to obtain or hold any employment whatsoever through the balance of 1982 and all of 1983 as a result of the accident. (Tr. 7) For the first six or eight months after the accident she could not stand up without a steel brace. About July of 1983 she wore a corset or body cast and was still wearing it when she was called back to work on February 1, 1984. (Tr. 7) Whether she could have worked and earned a salary for some time prior to February 1, 1984, is not clear. On cross-examination she testified that she could not remember the exact date on which she was substantially healed so as to be able to go about her day to day living but she did say she wore the brace for six to nine months after she started back to work. (Tr. 59)

The record indicates that the Department has already paid Claimant for the period of July 1, 1983, through January 13, 1984, so the period in question is October 8, 1982, the date of the accident, to July 1, 1983, and the last two weeks in January of 1984. As for the two weeks, because the Department paid her for the several months prior and the lack of argument or position by the Respondent, we find that she could have earned her salary during that time. As for 8¾ months, the evidence is that she wore a steel brace and was unable to work.

In *Neylon v. State* (1986), 39 Ill. Ct. Cl. 63, the issue was expressly addressed. The claimant admitted to having suffered a non-occupational related disability stroke and claimed entitlement to a disability pension equal to one-half of the final average compensation he would have been entitled to at the time of the stroke had he not been wrongfully discharged. The argument was

that had he been working he would have been entitled to the disability payments as a benefit of being a State employee under the provisions of sections 14—124 and 14—125 of the Pension Code. (Ill. Rev. Stat., ch. 108½, pars. 14—124, 14—125.) Such a benefit is a part of an employee's compensation and is clearly covered in section 111b of the Personnel Code. However, section 111b of the Personnel Code does not provide this Court with jurisdiction. The funds with which such disability benefits are paid are held in a trust and are segregated from other State funds. Determinations of eligibility are made by the Board of Trustees of the Retirement System. Those decisions are subject to administrative review, not review in the Court of Claims. (Ill. Rev. Stat., ch. 108½, par. 14—150.) In *Neylon*, the claimant was directed to exhaust that remedy. Based on the record in that case, the Court was able to compensate the claimant for the sick days he would have accumulated, and been required to use, as a condition of eligibility to receive the disability payments. We cannot do so in this case. In *Neylon*, the claimant never actually went back to work. The Claimant in this case did go back to work. There was no testimony about sick days (or vacation days), no express claim made for them, or any indication whatsoever as to whether these days were "put back on the books" as of her final reinstatement. We find that Claimant failed to sustain her burden of proof as to entitlement to compensation from the Court of Claims which she would have earned during the 8½ months she was recuperating from her injuries. The salary she testified she would have earned during that period was $2,122.00, so $18,567.50 will also be deducted.

The remaining issue before the Court is whether Claimant should be awarded interest.

In support of Claimant's position that interest should be applied, three arguments are forwarded. Claimant first argues that section 11b of the Personnel Code permits interest to be paid on back wage claims. (Ill. Rev. Stat. 1989, ch. 127, par. 63b 111b.) The argument is premised on a self-created meaning of the term "full compensation." In order to receive full compensation for wages to have been earned in years past, Claimant asserts that a "reasonable interpretation to the value of money" requires the awarding of interest. Otherwise she is not getting full compensation. Claimant proposes using an interest rate of 6% as a measure, or a basis, of interest that should be added to her back wages awarded to give her full compensation. In support of her argument for interest, Claimant cites *Nagle v. State* (1975), 31 Ill. Ct. Cl. 74. Claimant notes that the *Nagle* court opined that a claimant for back wages should receive,

"an award in the amount of $20,000.00 ° ° ° which amount is to be full and complete compensation for *any and all damages, as well as salary.*" (31 Ill. Ct. Cl. at 77 (emphasis added).)

The *Nagle* court was not addressing whether a back wage claimant could receive interest. The language was in reference to other damages in addition to the loss of wages incurred by claimant.

Claimant also cites *Lewis v. Stran-Steel Corp.* (1978), 58 Ill. App. 3d 280, N.E.2d 714, in support. The *Lewis* decision does not pertain to the State of Illinois.

Claimant argues that the basic principles of the due process clause in the 1971 Constitution of the State of Illinois, article I, section 2, and in the Constitution of the United States, amendment XIV, section 1, requires that she be given full and complete compensation for any and all damages as well as salary incurred by her as a result of her discharge. If it is Claimant's position that in not awarding interest this Court is acting in an

unconstitutional manner, then the Claimant has a cause of action in another forum. *In re Application of Reyes* (1982), 35 Ill. Ct. Cl. 498; *Rossetti Contracting Co. v. Court of Claims* (1985), 109 Ill. 2d 72, 485 N.E.2d 332.

Lastly, Claimant argues that section 2—1303 of the Code of Civil Procedure requires interest to be paid at 6% from the date of the judgment. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1303.) Section 2—1303 specifies that

"[j]udgments recovered in any court shall draw interest at the rate of ° ° ° 6% per annum when the judgment debt is ° ° ° a governmental entity."

Respondent objects to the awarding of interest, citing *I & D Pharmacy, Inc. v. State* (1984), 37 Ill. Ct. Cl. 37, in support of the objection.

The Court finds that interest is not recoverable in this matter. The *I & D Pharmacy* decision stands for the proposition that interest is not recoverable pursuant to section 2—1303 of the Code of Civil Procedure against Respondent. The *I & D Pharmacy* court noted that interest is only recoverable against the State if the State is specifically mentioned in a statute. The State of Illinois is not specifically mentioned in section 2—1303. (37 Ill. Ct. Cl. 37, 42.) See *Doe v. State* (1986), 40 Ill. Ct. Cl. 37, reconsid. (1988), 40 Ill. Ct. Cl. 38; and *In re Walker* (1989), 131 Ill. 2d 300, 546 N.E.2d 520.

In summary, the adjustments are as follows:

| | | |
|---|---|---|
| Gross Back Wages | | $189,970.96 |
| Less: Mitigation and | | |
| Unemployment | $70,317.16 | |
| 8¾ months at | | |
| $2,122.00 @ | 18,567.50 | |
| | 88,885.10 | |
| Net Back Wages | | $101,085.86 |

In the usual back wage claim additional adjustments are made for appropriate employer contributions and appropriate employee deductions and these adjustments are fully set forth in an appendix to the decision. Computation of the details contained in the appendix takes some time. Subsequent to her hearing Claimant filed a motion for an expedited decision citing time constraints involved with her election to participate in the early retirement incentive program. A concerted effort has been made by the commissioner and the judges to render a prompt decision. The exact details of contributions to the State Employees Retirement System and to FICA and tax withholdings will have to be rendered at a later date in order to accommodate the Claimant.

Accordingly, it is hereby ordered that the Claimant be, and hereby is, awarded $101,085.86 to be adjusted as described hereinabove which adjustments will be fully set forth in an appendix incorporated herein; it is further ordered that the additional sum of $11,128.00 is awarded and is to be paid to the Director of Employment Security to compensate, pursuant to Ill. Rev. Stat., ch. 48, par. 490D, for amounts of unemployment compensation received by the claimant in 1985 and 1987.

## APPENDIX A

Identification of the State Contributions and Deductions from Back Salary Award.

To the State Employees Retirement System

| | |
|---|---:|
| Employee's contribution to State Employees Retirement Sys. | $10,448.40 |
| Employee's contribution to FICA | 6,277.32 |

| | |
|---|---|
| State's contribution to State Employees Retirement System | 9,004.62 |
| State's contribution to FICA | 9,004.62 |
| To Illinois State Treasurer to be remitted to Internal Revenue Service: | |
| Claimant's Federal Income Tax | 20,217.17 |
| To Illinois Department: Claimant's Illinois Income Tax | 2,527.15 |
| To Office of Employment Security: Director Dept. of Employment Security | 11,128.00 |
| To the Claimant: Net Salary | 61,625.82 |

Total Award $127,485.80