(No. 82-CC-0477–)

CAROL SMART, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 14, 1995.*

*Opinion filed February 22, 1996.*

SCHOENFIELD & SWARTZMAN (RICK SCHOENFIELD, of counsel), for Claimant.

JIM RYAN, Attorney General (IAIN D. JOHNSTON, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This cause comes on to be heard on the parties' cross motions for summary judgment. Both parties have submitted briefs and oral arguments were heard by the Court.

### Facts

Claimant, Carol Smart, was charged with murder in the shooting deaths of his mother and father in the Circuit Court of Christian County, Illinois in 1958. A jury found Smart unfit to stand trial on criminal charges by reason of "feeblemindedness." Pursuant to Ill. Rev. Stat. 1957, ch. 38, par. 592, the court ruled that Smart was "legally insane by reason of mental retardation or feeblemindedness at the time of the impaneling of this jury." The court ordered Smart confined by the Department of Public Welfare, predecessor of the Department of Mental Health and Developmental Disabilities (hereinafter DMHDD). Smart was to be confined until he had "entirely and permanently recovered from his insanity." It was further ordered that if Smart recovered or was due to be released by due process of law, he was to be transferred to the custody of the sheriff of Christian County for disposition of the pending criminal charges.

Claimant was subsequently held in the custody of DMHDD until September 16, 1980, when all pending charges against him were dismissed with leave to reinstate and Claimant was released. Claimant contends that he was falsely imprisoned during four specific periods between

1974 and 1980 and that damages result from said false imprisonments. Respondent contends that Claimant was held pursuant to court orders and that DMHDD cannot be held liable for false imprisonment as a matter of law. We shall discuss each time period in question separately.

## I. *July 31, 1974, to November 4, 1975*

On July 31, 1974, the Circuit Court of Lee County ruled that Smart was competent to manage his person and estate and ordered him restored to legal competency. Claimant had been confined at the Dixon Development Center (hereinafter Dixon) since October 10, 1968. David Edelson was superintendent of Dixon from July, 1962 until October, 1978. The record indicates Mr. Edelson received notice of the court's order. Smart was not transferred to the sheriff of Christian County until more than 15 months had elapsed.

On August 5, 1975, an attorney for DMHDD wrote a letter to the assistant state's attorney of Christian County and copied Superintendent Edelson advising that action be taken to make a determination as to Smart's fitness to stand trial or that the pending criminal charges be dropped and civil commitment proceedings begun. These actions were advised to avoid civil rights violations as adjudicated in *Jackson v. Indiana* (1972), 406 U.S. 715. The U.S. Supreme Court held in *Jackson* that "a person committed because of their unfitness to stand trial cannot be held more than a reasonable time to determine if they will have the capacity in the foreseeable future to stand trial. If this is not the case the state must either institute civil commitment proceedings or release defendant."

The letter further stated that the staff at Dixon believed Smart had "maximized his treatment within the institutional setting and that treatment is now more appropriate in a less restrictive environment * * *."

On October 14, 1975, the same DMHDD attorney wrote again to the assistant state's attorney, copying Superintendent Edelson, reiterating the DMHDD's request that action be taken by the state's attorney's office.

Smart continued in custody at Dixon until November 4, 1975, when he was produced in Circuit Court of Christian County pursuant to a writ of habeas corpus directed to Superintendent Edelson. Smart was transferred to the custody of the sheriff of Christian County relieving DMHDD of custody and responsibility at that time.

Claimant asserts that he was falsely imprisoned as the 1958 court order constituted only a criminal commitment, as he was unfit to stand trial and charges were still pending against him. Respondent argues that the 1958 order was both civil and criminal, as Ill. Rev. Stat. ch. 38, section 592 read, in pertinent part, "if said jury so impaneled by their verdict determined that said person was at the time of impaneling * * * either insane *or* feeble minded (emphasis added) it shall be the duty of the Department of Public Welfare to keep safely the person committed in the institution as directed by the Court, until he or she shall have fully and permanently recovered from insanity." Ill. Rev. Stat. 1957, ch. 91½, par. 1—1 *et seq.*, now was the civil commitment statute extant in 1958 as part of the Illinois Mental Health Code.

Section 592 was repealed in 1965 and was replaced by article 104 of Illinois' new Criminal Code. That article provided, in relevant part, as follows:

"§104—1. Definition.
For the purpose of this article, 'incompetent' means a person charged with an offense who is unable because of a physical or mental condition:
(a) To understand the nature and purpose of the proceedings against him; or
(b) To assist in his defense;
* * *
§104—2. Proceedings to Determine Competency.
(a) If before a trial * * * the court has reason to believe that the defendant is

incompetent the court shall suspend the proceedings and shall impanel a jury to determine the defendant's competency * * *.
(f) If the defendant is found to be incompetent he shall be committed or remain subject to the further order of the court in accordance with Section 104—3.

* * *

§104—3. Commitment of Incompetent.

* * *

(b) A person who is found to be incompetent because of a mental condition shall be committed to the Department of Mental Health during the continuance of that condition."

Sections 104—1 through 104—3 were repealed as of January 1, 1973, and replaced by sections 1005—2—1 *et seq.* (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2 *et seq.*) Those sections defined unfitness in the same terms as the 1965 Code. With regard to defendants who were to be unfit to stand trial, section 1005—2—2 provided, in relevant part, that:

"(a) If the defendant is found unfit to stand trial * * * the court shall remand the defendant to a hospital, as defined by the Mental Health Code of 1967, and shall order that a hearing be conducted in accordance with the procedures, and within the time periods specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge or any such defendant found to be in need of mental treatment, shall be determined in accordance with such act. If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition.
(b) A defendant hospitalized under this Section shall be returned to the court not more than 90 days after the court's original finding of unfitness, and each 12 months thereafter. At such re-examination the court may proceed, find, and order as in the first instance under paragraph (a) of this Section. If the court finds that defendant continues to be unfit to stand trial * * * but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance."

The Mental Health Code hearing referred to in section 1005—2—2(a) was required to be held within five court days, after admission of the subject to the hospital, or the court's receipt of the petition, whichever was earlier. (Ill. Rev. Stat. 1973, ch. 91½, par. 8—8.) The standard for commitment under the Mental Health Code was

dangerousness to one's self or to others, and excluded mental retardation. Ill. Rev. Stat. 1973, ch. 91½, par. 1—11.

Based upon the above legislative history, we find Claimant is correct in asserting the original and subsequent commitments were criminal in nature and did not constitute civil commitment for the period ending November 4, 1975. The letters to the Christian County state's attorney from the DMHDD lawyer also belie Respondent's argument that Smart's commitment was civil as well as criminal. Said letters request a determination of Smart's competency to stand trial or that the charges be dropped and Smart be committed civilly under the Mental Health Code.

False imprisonment is an unlawful restraint of an individual's personal liberty or freedom of locomotion. In this instance, Smart was held for over one year after being declared competent without hearing in accordance with DMHDD's own rules or the 90 day period required by section 1005—2—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1) applicable at the time. The State cannot rely upon arcane language from the 1958 statute which was repealed in 1965. We find Smart was falsely imprisoned from October 31, 1974, to November 4, 1975, and grant his motion for summary judgment for said period for false imprisonment and deny Respondent's cross-motion thereon.

Claimant asserts a due process violation pursuant to *Jackson v. Indiana* (1972), 406 U.S. 715. *Jackson* addressed both equal protection and due process under the Federal constitution. Claimant argues claims based on constitutional rights are tort claims, and, as such are properly brought before this Court under section 8(d) of the Court of Claims Act. (705 ILCS 505/8(d).) Respondent

argues that this Court lacks jurisdiction because a cause of action alleging violation of due process can be brought in the United States District Court, a court of general jurisdiction.

A review of case law indicates that Respondent's position is correct. Issues of constitutionality are outside the jurisdiction of the Court of Claims. (*Reyes v. State* (1979), 35 Ill. Ct. Cl. 498; *Winzeler Trucking Co. v. State* (1978), 32 Ill. Ct. Cl. 191.) Both cases dealt with alleged violations of equal protection and due process which this Court is not given exclusive authority to hear. Claimant has already sought relief on these issues in Federal district court. Additionally, the issue of false imprisonment appropriately before this Court by its very definition requires a determination as to a violation of due process under Illinois law.

We hereby deny Claimant's motion for summary judgment as to jurisdiction on the constitutional due process claims for all periods and grant Respondent's motion for summary judgment thereon.

## II. *December 29, 1975, through October 27, 1976*

On December 29, 1975, the Circuit Court of Christian County held a competency hearing and found Carol Smart unfit to stand trial. The order provided that Smart "be remanded to a hospital as defined in the Mental Health Code and specifically to the Dixon Developmental Center where a hearing shall be held in accordance with the provisions of the Mental Health Code and within the time specifications." Claimant was not given a hearing pursuant to the section 1005—2—2(a) of the Mental Health Code. As discussed in Part I of this opinion, a hearing was to be held within five court days after admission of the subject to the hospital, or the court's receipt of

the petition, whichever was earlier. The standard for civil commitment under the Mental Health Code was dangerousness to one's self or to others and excluded mental retardation. (Ill. Rev. Stat. 1973, ch. 91½, par. 1—11.) Section 1005—2—2(a) further provided, "If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance \* \* \*."

Respondent argues that its failure to hold the hearing was of no consequence as Smart was subsequently returned to DMHDD custody at his bond hearing on October 27, 1976, and that even if a hearing had been held, the DMHDD could not have released Smart from custody.

We disagree with Respondent's contentions. The language of the Christian County Circuit Court order and section 1005—2—2(a) is clear that Smart was to be given a hearing in a timely manner. A determination was to be made at that time as to whether Smart should have been hospitalized. If he was not ordered hospitalized, DMHDD should have petitioned the trial court for Smart's release on bail or recognizance.

Smart was entitled to a hearing to determine whether he should have been hospitalized. We cannot speculate as to the result of such a hearing and thereby cannot conclude that the Respondent should have petitioned for his release or bond. When a custodian continues to hold an inmate in custody in violation of the custodian's obligation to bring the inmate to court, the custodian is liable for wrongfully detaining the inmate. (*Fulford v. O'Connor* (1954), 3 Ill.2d 490, 500; *Llaguno v. Mingey* (7th Cir. 1985), 763 F.2d 1360; *Gerstein v. Pugh* (1975), 420 U.S. 103.) We find Respondent's failure to give Smart a hearing amounted to false imprisonment for the period of five

court days after December 29, 1975, to October 27, 1976. Claimant's motion for summary judgment on false imprisonment during this period is granted and Respondent's cross-motion for summary judgment thereon is denied.

### III. *November 10, 1978, to September 16, 1980*

A bond hearing was held in Christian County on October 27, 1976. The court entered an order on November 10, 1976, which provided in pertinent part:

"Defendant is no longer a person in need of hospitalization, as defined by Ch. 91-1/2, The Mental Health Code
It is hereby ordered:
That the Defendant is released on his own recognizance, subject to the following terms and conditions:
(a) That the Defendant is to remain under the supervision of the DMHDD;
(b) That such supervision is to be at the Dixon State Hospital, or such facility associated therewith as DMHDD may direct;
(c) That the Defendant is to be placed in such rehabilitation program as may be directed by DMHDD; * * * any material change in programs established by DMHDD, and any material change in condition of the Defendant be reported forthwith to this court."

Claimant was held by DMHDD, primarily at Dixon until his discharge on September 16, 1980. From November 2, 1977, to approximately March 10, 1978, Smart resided at a facility called the Village Inn which was a more permissive living facility than Dixon.

Smart argues that he was again falsely imprisoned as no hearing was held by DMHDD for civil commitment pursuant to section 1005—2—2(a), (b) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2(a)(b)) and the Mental Health Code of Illinois. He asserts that the conditions of bond resulted in a conundrum. In essence, the conditions of bond resulted in Smart's continued confinement at Dixon.

Respondent asserts that Smart was held pursuant to a viable court order which required DMHDD to supervise Smart at Dixon or some other DMHDD facility.

Respondent further asserts that Claimant's remedy lies in appeal of the Christian County Circuit Court's order, not with DMHDD which merely followed its order.

Claimant argues that *People v. Ealy* (1977), 49 Ill. App. 3d 922, 365 N.E.2d 149, 7 Ill. Dec. 864, is determinative of the issues herein. Ealy was charged with a felony robbery and released on a recognizance bond. Ealy was evaluated by Cook County court-appointed psychiatrists and a hearing was held to determine his fitness to stand trial. A criminal division jury found Ealy incompetent to stand trial. Ealy was then ordered transferred to DMHDD for a determination of whether he met the criteria for civil commitment. A DMHDD hearing was held in Cook County Circuit Court, County Division, wherein defendant Ealy was found to be "not in need of mental treatment." (*Ealy*, 49 Ill. App. 3d at 927.) Thereafter DMHDD filed a petition in the criminal proceeding for defendant's release on bail or recognizance. Instead, defendant's motion for a second psychiatric examination to determine fitness to stand trial was allowed. Defendant was again adjudged unfit to stand trial. The criminal court then transferred Claimant to DMHDD for a second commitment hearing. Ealy was again found to be "not in need of mental treatment." (*Ealy*, 49 Ill. App. 3d at 927.) DMHDD again petitioned for Ealy's release. A new hearing to determine fitness to stand trial was held. Ealy was granted bond at $50,000, a bond defendant could not meet, based upon the court's belief that the defendant was a hazard to society and should be detained until DMHDD could rehabilitate him. Ealy demanded another hearing on fitness to stand trial and, specifically, whether he would ever become fit to stand trial. A hearing was subsequently held which determined Ealy would not become fit to stand trial in the foreseeable future. The trial judge denied Ealy's motion to dismiss the charges against him and

his request for release from DMHDD custody. Ealy was ordered transported to a DMHDD facility for hospitalization during the pendency of his appeal by order of the court.

On appeal by defendant Ealy and DMHDD, the appellate court ordered the trial court to vacate the order transferring Ealy to DMHDD, and remanded the case for a further bond hearing.

*Ealy* is not directly determinative of Smart's position during the period of November 10, 1978, to September 16, 1980. No hearing was held to determine Smart's ability to stand trial in the foreseeable future during the period in question as in *Ealy*. Further, Claimant's argument that DMHDD had absolute authority to release Smart under the bond is not proved in the pleadings and exhibits relied upon by Claimant. At the very least, DMHDD was bound by the circuit court order to advise the court of any change in Smart's treatment or condition. The plain language of the order indicates Respondent had no direct authority to release Smart without the court's permission.

DMHDD was in a similar position in *Ealy* and the appellate court recognized that DMHDD could not refuse to accept the defendant without risking contempt proceedings.

The *Ealy* court found that the trial court had acted improperly in directing Ealy's hospitalization at DMHDD and granted DMHDD's motions for appeal of the circuit court order. The court commented that:

"* * * there is nothing in either the UCC or the MHC permitting unfit defendants to be housed in Department facilities when the Department has already determined that no treatment can be offered to an individual found not in need of mental treatment. In fact, once an individual is no longer in need of hospitalization, the superintendent of the Department must grant an absolute discharge. (Ill. Rev. Stat. 1975, ch. 91-1/2, par. 10—4)."

However, the court did not state such discharge could be made in contravention of a court order.

The Claimant herein did not request clarification or seek appeal of the offending Christian County Circuit Court order. Had he done so, our task would be far simpler. The order acknowledges that Smart no longer needed hospitalization but specifically required him to be supervised at a DMHDD facility or a facility associated therewith. It further stated that Smart "was to be placed in such rehabilitation programs as may be directed by the Department."

As no definitive interpretation of the above order is available to us, we must deny Claimant's motion for summary judgment on false imprisonment during the period of November 10, 1978, to September 16, 1980, and grant Respondent's cross-motion thereon. Claimant's remedy was appeal or modification of the circuit court order.

IV. *December 29, 1979, to September 16, 1980*

Smart argues he was falsely imprisoned from December 29, 1979, to September 16, 1980, due to the enactment of section 104—28(a) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 104—28(a)) which became effective December 28, 1979. The statute provided that criminal defendants found unfit to stand trial prior to the date of the statute could not be held in DMHDD custody longer than the maximum time they would have served if they had been convicted before becoming eligible for parole, less credit for good time. Pursuant to section 1003—3—4(a) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—4(a),) the longest term Smart would have served was 20 years. By the effective date of the statute, Smart was in custody for in excess of 20 years.

Respondent claims that holding Smart for nine months after the statute became effective did not constitute

false imprisonment because the court, not DMHDD, is responsible for a defendant's release. We find this argument lacking merit. Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2(c), enacted prior to this statute, provided that if a defendant was confined in a hospital for a period equal to the maximum sentence "the court shall order the charge or charges dismissed on motion of the defendant, his guardian or the Director of DMHDD." Also, Respondent had been responsible for petitioning the circuit court for hearings on fitness to stand trial pursuant to section 1005—2—2(a) of the Criminal Code. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2(a).) It appears clear that DMHDD as supervisor of Smart was responsible for petitioning the court for Smart's release.

We hereby grant Smart's motion for summary judgment on false imprisonment for the period of December 28, 1979, through September 16, 1980.

Claimant's final motion for summary judgment is for an alleged violation of Smart's right to treatment while in custody at Dixon. We find there is insufficient evidence in the pleadings to support Claimant's motion and it is hereby denied.

It is hereby ordered that this cause shall be remanded for hearing on:

(1) Damages on false imprisonment during periods I, II and IV;

(2) The claim of denial of right to treatment.

## OPINION

JANN, J.

This matter is before the Court upon the joint stipulation of the parties hereto. This claim sounds in tort and

is before us pursuant to section 8(d) of the Court of Claims Act. 705 ILCS 505/8(d).

That the Claimant was charged with murdering his parents in 1958. Claimant was found not mentally fit to stand trial. Therefore, Claimant was admitted to the Department of Public Welfare, which became the Department of Mental Health and Developmental Disabilities (DMHDD). Claimant was held by DMHDD until his release in 1980. Claimant brought this action for false imprisonment for periods of time he was held by DMHDD between the years 1975 and 1980. On April 14, 1995, this Court granted summary judgment as to parts of Claimant's claim.

We note that the parties hereto have agreed to a settlement of these claims, and that Respondent has agreed to the entry of an award in favor of Claimant in the amount of $65,000.

Based on the foregoing, Claimant Carol Smart is hereby awarded the sum of $65,000 in full settlement and final satisfaction of the claim herein.